106　237
178　382

106　　　237
217　　　90

## Pennypacker *versus* Jones.

1. A. agreed to place in B.'s mill, within a stipulated time, certain machines to make flour, which should have a capacity not below 200 barrels of high grades of flour daily, and further agreed that it should be no experiment, and in proof thereof that in case the results were not as promised the machines should be retained without any price being paid. The machines when furnished were found not to make a high grade of flour, and not to be capable of producing the stipulated number of barrels per day. In an action by B. against A. to recover damages,

    *Held*, that the clause in the agreement that the machines might be retained was not a liquidation of damages, but in the nature of a penalty.

    *Held, further,* that the measure of damages was the amount paid upon the machines, the loss by defects in the machinery, and the cost incurred in repairing the mill and putting it into condition to produce 200 barrels daily of a high grade of flour, less the value of that portion of the defendant's machines retained and used in the repairing and refitting of the mill.

2. The loss of possible profits, which might have been made if the mill had run properly, was not a proper subject of damages, the plaintiff being measurably in fault, and, further, because such damages were too remote and speculative.

April 4, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county*, to review the judgment entered upon the decision of a referee, appointed by agreement under the provisions of the Act of May 14, 1874: Of January Term, 1884, No. 166.

Assumpsit, by William G. Pennypacker & Co., against Jones, Ballard & Ballard, to recover damages for breach of contract in failing to furnish certain machines to plaintiffs according to contract. Defendants subsequently brought an action against plaintiffs to recover the price of said machines. Both cases were referred to George Tucker Bispham, Esq., as aforesaid, who reported the facts to be substantially as follows:

Plaintiffs owned and operated a flour mill in the city of Philadelphia. In 1881 they entered into the following contract with defendants:—

"PHILADELPHIA, PA., July 5th, 1881.

"We the undersigned hereby agree to place in your mill 2136 Market street, Five of our reduction machines for wheat, one machine for Bran, and Four of my Middlings Mills, which with the one Allis Roller Mill and one set Smooth rolls now in said mills and to be retained, we undertake will produce the result stated below. We further agree and contract that with this arrangement of machinery, as we shall plan it, your mill shall have a capacity not below two hundred barrels daily

[Pennypacker *v.* Jones.]

with full modern percentage of high grades flour equal in quality to best in market. We will complete all and start everything complete and show full satisfactory results as above stated for the sum of thirty-seven hundred and fifty dollars, to be paid when all is finished and proved, including all bolting connections, spouts, elevators, belts, &c., and in fact everything made absolutely complete. We further agree that this shall be no experiment and in proof of same we hereby agree that our machines shall be retained without any price being paid by you in case results are not as promised. Again further we agree to ship our machines within ten days from date we receive your order, and not to stop your mills exceeding six days from time we commence work, which shall be done promptly on arrival of our machines at Philadelphia. It is understood that you will procure first-class workmen to put up machines and construction generally for our account and pay their wages charging same to my contract as an advance payment on same. I undertaking the full management and plans of said workmen. The responsibility of purifying the middlings must be entirely with party furnishing purifiers, and the middlings must be returned to my machines in clean condition.

" I hereby agree to the Snow Flake Machine being used.

" JONES, BALLARD & BALLARD.

" The above is hereby accepted subject to conditions as therein stated. Payment to be made after a steady run of six days consecutively showing a production in flour of 1200 barrels, or 200 barrels each consecutive day, with clean feed.

" WM. G. PENNYPACKER & CO."

The machines did not arrive at the time stipulated, and there was a delay of more than six days in starting the mill after the machines were delivered. This, however, was not occasioned by the fault of defendants.

After being tested, the machines were found defective, and failed to produce the stipulated 200 barrels a day. The mill was kept running with said machines until October 15, 1881, when it was stopped. The plaintiffs then repaired the mill and put in some new machinery, retaining a portion of that furnished by defendants. The present actions were then instituted.

The referee found that plaintiffs had paid defendants in advance on account of the price of the machines $930.79.

He also found that they had sustained a direct actual loss on account of the defect of the machines in the running of the mill amounting to $1,096.75.

[Pennypacker v. Jones.]

He also found that plaintiffs expended in repairing their mill and putting it into condition to produce 200 barrels of flour a day the sum of $2,030.95.

He also found that a loss of possible profits was sustained by plaintiffs, amounting in all to $12,411.

The referee reported that the last class of damages above named were too speculative and remote, and further was of opinion that, as by the express terms of the contract, plaintiffs might retain the machines without paying any price "in case the results were not as promised," this amounted to a stipulation liquidating the damages, and that, therefore, plaintiffs were not entitled to other or further damages. In the cross-action by Jones, Ballard & Ballard against William G. Pennypacker & Co., he found generally for defendants.

The plaintiff filed, inter alia, the following exceptions to the referee's decision:—

1. Because the referee finds as a conclusion of law that under the contract between the parties the value of the machines retained by the plaintiffs is to be treated as liquidated damages, and that hence although the said machines are totally incapable of producing the stipulated results, and may be utterly worthless, yet the said plaintiffs cannot recover any damages whatever caused by the defendants' breach of contract.

2. Because the learned referee erred in not reporting, as a conclusion of law from the facts found that the plaintiffs were entitled to recover the amount of damages which they proved to have sustained by reason of the defendants' breach of contract.

3. Because, assuming that the referee was correct in finding that the plaintiffs were barred from all redress for their proved damages by reason of the contract clause, whereby the defendants agree that "our machines shall be retained without any price being paid by you in case results are not as promised," yet the learned referee should have found as a conclusion of law that if the damages were thus liquidated by the said clause, yet that full effect must be given to the said clause, and that the plaintiffs were, therefore, entitled to recover the money actually paid by them as advance payments on account of the said machines, amounting, as reported by the referee, to $930.79, as otherwise the said plaintiffs have not retained the machines without any price being paid, but on the contrary have paid a great portion of such price.

The referee overruled these exceptions, and judgment having been entered according to his decision, Wm. G. Pennypacker & Co. took this writ of error, assigning for error the overruling of said exceptions and the judgment.

[Pennypacker *v.* Jones.]

*Angelo T. Freedley*, (*Francis T. Chambers* with him), for plaintiffs in error.—The case falls within none of the exceptional cases wherein stipulations are treated as liquidated damages—they are not stated to be liquidated, and are easy of computation, and the same liability is imposed, whether the breach is entire or partial: Shreve *v.* Brereton, 1 P. F. S., 175; Curry *v.* Larer, 7 Barr, 470; Lampman *v.* Cochran, 16 N. Y., 275; Hamaker *v.* Schroers, 49 Mo., 406; Curry *v.* Larer, 7 Barr, 471, 472; Streeper *v.* Williams, 12 Wright, 454; Trenwith *v.* Meeser, 34 Leg. Int., 140; Gillis *v.* Hall, 7 Phila. Rep., 428; S. C., 2 Brewster, 342. The loss of profits or advantages which must have resulted from a fulfillment of the contract may be compensated in damages when they are the direct and immediate fruits of the contract, and must, therefore, have been stipulated for and have been in the contemplation of the parties: Adams Express Co. *v.* Egbert, 12 Casey, 364; Reaney *v.* Culbertson, 9 Harris, 507; Fiegel *v.* Latour, 32 P. F. S., 450; Hunter *v.* Land, Id., 301: Horton *v.* Hall, 39 Leg. Int., 62; Allegheny Valley R. R. *v.* Steele, Id., 281; Brown *v.* Gilmore, 11 Norris, 47.

*L. W. Barringer*, (*D. Moreau Barringer* with him), for the defendants in error.—The damages in this case are liquidated by the agreement itself. The intentions of the parties gathered extra the written instrument made, control the technical rule as found upon the face of the instrument, and thus fix the sum therein mentioned as stipulated damages: Nash *v.* Towne, 5 Wall, 689; Barreda *v.* Silsbee, 21 How., 146–161; Shore *v.* Wilson, 9 Cl. & Fin., 355; Macdonald *v.* Longbottom, 1 El. & El., 977; Brawley *v.* U. S., 96 U. S., 168; Judge Hare's Notes to Peachy *v.* Somerset, 2 Lead. Cas. in Eq., 1082; Merriam *v.* U. S., 107 U. S., 441; Dubois *v.* Bigler, 14 Norris, 203; Bigony *v.* Tyson, 25 P. F. S., 157; Mathews *v.* Sharp, 3 Out., 564. The damages claimed were too remote and speculative: Lentz *v.* Choteau, 6 Wright, 435; McKnight *v.* Ratcliff, 8 Id., 156; Rogers *v.* Bemus, 19 P. F. S., 432; Adams Express Co. *v.* Egbert, 12 Casey, 360; Erie City Iron Works *v.* Barber, 6 Out., 156; Coal Co. *v.* Foster, 9 P. F. S., 365; Wolf *v.* Studebaker, 15 Id., 459; Sutherland on Damages, §§ 110, 491, 492; Sedgwick on Damages, vol. 1, 327. The machines should have been tendered to defendants before action brought: Story on Contracts, 1330, and cases cited; Albert *v.* Frick, 1 Pennypacker, 139; Philadelphia Hydraulic Works *v.* Schenck, 30 P. F. S., 336.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

[Pennypacker v. Jones.]

We find ourselves unable to agree with the learned referee in this case in holding that there could be no recovery by the plaintiffs for the reason that the damages were liquidated by the contract. The provision of the agreement upon which this conclusion is founded is in the following words: "We further agree that this shall be no experiment, and in proof of same we hereby agree that our machines shall be retained without any price being paid by you in case results are not as promised."

The machines put up by the defendants having remained with the plaintiffs, the referee held that the damages sustained by the plaintiffs, by reason of the breach of contract by the defendants, were liquidated by force of the foregoing stipulation, and that no other or different damages could be recovered. The referee found as a fact that the plaintiffs had paid the sum of $930.79 by way of advance payments under the contract. We are quite clear that to this extent, at least, the plaintiffs were not compensated by retaining the machines, since they were to pay nothing for them, if the results produced were not as promised. The referee also found that the defendants did not fulfill their contract in important and essential particulars, to wit, that their machines did not have a capacity to produce two hundred barrels per day, as the contract required; that they would not produce full modern percentages of high grade flour; that the machines were not shipped within the time fixed by the contract; that the plaintiffs' mills were stopped more than six days from the time the defendants commenced work on them, and that clean feed was not produced. He also found, however, that the delay of more than six days in starting the mill was not the fault of the defendants; that the cleaning and separating machinery was not to be, and was not, furnished by the defendants, but by the plaintiffs, and that the defect in the quality of flour produced was due in part to defects in the cleaning machinery, partly to defects in the bolting system, and partly to defects in the purifiers.

The damages actually sustained by the plaintiffs were classified, and represented in figures, as follows:

| | |
|---|---|
| Amount paid in advance, | $930 79 |
| One half of loss sustained in running the mill from September 12th to October 15th, 1881, | 1,096 75 |
| Cost incurred by the plaintiffs in repairing their mill after October 15th, and putting into condition to produce 200 barrels daily, | 2,030 95 |

There was also a computation of loss of possible profits which might have been realized if the mill had been running

10 OUTERBRIDGE.—16.

during the whole period of repairs from August 25th to November 1st, 1881, amounting in the whole to $12,411.

None of these actual damages, or unmade profits were allowed for the reason already stated, and, as to the profits, for the additional reasons that their loss was not due solely to defects in the defendants' machines, but to lack of capacity in the cleaning machinery, and that they were too speculative to furnish a proper measure of damages. As to the refusal of the referee to allow the possible profits, we concur in his conclusions. Of course, if they were not realized because the plaintiffs were partly in fault, they could not be recovered. This is a question of fact, and we are bound by the finding of the referee in relation to it. No attempt is made to show that his finding was contrary to the evidence on this subject. We agree, also, that such possible profits are too remote and speculative to constitute a proper measure of damages.

Profits may be recovered where they are " part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the enjoyment of any other stipulation:" Hoy *v.* Gronoble, 10 Cas., 11; Adams Express Co., *v.* Egbert, 12 Cas., 364.

It was no part of this contract that the plaintiffs should make profits, or even have the opportunity of doing so, by carrying on a business with the machinery which the defendants agreed to erect. It is not like the sale of chattels or of land, where the difference between the contract value and the actual or market value of the property sold represents directly and immediately the measure of the party's loss or gain in the transaction. There the possible profit is the very object of the contract, and is necessarily in the contemplation of the parties. But when a machinist furnishes machinery to a mill owner it is no part of his engagement that a profitable business shall be carried on with the machinery furnished. Of course if it is defective he is responsible for the damage resulting directly from such defect; but that is a very different thing from the uncertain, remote and speculative profits which may or may not be made in the business to be done.

As to the remaining items of damage, however, in this case, we do not think they were liquidated by the contract. Ordinarily the question of liquidation arises upon agreements which provide for the forfeiture or payment of a fixed sum, and the contention turns upon the point whether the sum is to be regarded as a penalty or as a liquidation of the damages to be specifically paid by the party in default. Even in such cases, however, the sum named is not necessarily to be regarded as the amount to be paid upon a breach, unless an intent that

[Pennypacker v. Jones.]

it shall be so determined is clearly derived from the instrument itself, and also from a consideration of the surrounding circumstances. Thus we said in Streeper v. Williams, 12 Wr., on p. 454: "Upon the whole, the only general observation we can make is, that in each case we must look at the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case."

In Shreve v. Brereton, 1 P. F. S., on p. 185, READ, J., quotes as follows: "The general leaning, says Judge COULTER, however, is, that such agreements shall be considered as penalties, so that a party shall recover such damages only as he shows that in justice and fairness he ought to recover. The general rule of law is that the remedy shall be commensurate with the injury sustained. A scrutiny of the American cases leaves every agreement of the kind pretty much at large to stand on its own peculiarities." In that case the parties bound themselves for the faithful performance of the contract " in the sum of $10,000, not as a penalty, but as stipulated damages." Nevertheless, it was held upon the special circumstances of the whole case that the sum named was not to be regarded as stipulated damages, and a verdict was rendered and sustained for more than $25,000. One of the leading principles recognized and adopted, both by the court below and this court, in that case, was thus stated: " So where the sum which is to be a security for the performance of an agreement to do several acts, will, in case of breaches of the agreement, be in some instances too large, and in others too small a compensation for the injury thereby occasioned, that sum is to be considered a penalty." In Mathews v. Sharp, 3 Out., on p. 564, Mr. Justice TRUNKEY said, referring to Streeper v. Williams, supra, " In an elaborate opinion it was ruled that to determine whether the sum named as a forfeiture for non-compliance is intended as a penalty, or as liquidated damages, it is necessary to look at the whole contract, its subject matter, the ease or difficulty in measuring the breach in damages, and the magnitude of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach." There are numerous authorities on this subject, but probably their best expression is found in the foregoing citations.

Applying these doctrines to the case at bar the solution of the question is not difficult. In the contract between these parties nothing is said to the effect, either that for any breach

[Pennypacker *v.* Jones.]

the entire machinery may be retained without payment for it, or that for a gross breach it shall be retained as stipulated damages. No sum is fixed either as a penalty or as liquidated damages. It is manifest that if the defendants produced all the results agreed upon except a deficiency of one or two barrels in the daily product, the forfeiture of the entire contract price of the machinery would be entirely out of proportion to the damage sustained. Again the letter of this provision of the contract is that the machines may be retained if the *results* are not as promised. This relates only to the non-production of the results contracted to be produced, that is, that the mill should have a capacity of two hundred barrels daily, with full modern percentage of high grades flour equal in quality to best in market. It makes no provision for damages for other breaches of contract which may occur consistently with the production of the results stated. One of the items of damage sustained by the plaintiffs was that it took a greater quantity of grain to produce a barrel with the defendants' machines than with the ordinary process, and the referee has found especially that from this source alone, there was a positive loss to the plaintiffs of $1,096.75 in the actual running of the machines from September 12th to October 15th, 1881. This is a species of direct loss for which we think there can be a recovery. The cost to which the plaintiffs were subjected in repairing the mill after the defendants ceased work, is also a direct loss arising from the defective machinery furnished, and is not provided for in the contract. We think it clear that none of these items comes within the terms of the stipulation for the retention of the machines, and that it was not within the contemplation of the parties that they should. We therefore consider that the provision for the retention of the machines was only in the nature of a penalty, and that the true measure of damages is the loss actually sustained, flowing directly from the defects in the defendants' machines. But as the machines, or some of them, were retained by the plaintiffs and used by them in the re-arrangements made, equity requires that their just value should be deducted from the aggregate of the items of damage found by the referee, and to be allowed according to this opinion. As the report of the referee contains no finding of the value of the machinery thus retained and used by the plaintiffs, the case must be referred back to the referee for that purpose. When this is done the referee will allow as damages to the plaintiffs the three items of $930.79, $1,096.75 and $2,030.95, and will deduct therefrom the just value of the machines retained and used by the plaintiffs, rendering judgment in favor of the plaintiffs for the

[Com'th ex rel. Burns *v.* Handley.]

resulting sum, if any, and with such allowance of interest as may be proper and just in view of all the circumstances of the case.

The judgment is reversed and record remitted to the referee for further proceedings in accordance with this opinion.