# Merchants and Manufacturers National Bank *versus* Spratt, Johnston & Co., Garnishees.

1. Under a contract for the sale of "300 tons of plow steel" of various specified brands and prices, in order to entitle the purchaser to set-off against his indebtedness for such part of the steel as he actually received, a claim for damages arising from the vendor's alleged failure to fulfil the contract, he must prove that he made demand, designating the kinds, and amounts of each kind, required, and that his demands were not fulfilled.

2. In such case, mere insolvency by the vendor after partial execution of the contract, and his failure to furnish a partial lot which had been duly demanded, will not relieve the purchaser from the necessity of making further specific demand, in order to claim damages as for breach of the contract.

3. In an attachment execution against A., as the garnishee of B., A. admitted an indebtedness to B., but claimed to set off a larger sum as damages due by B. for breach of a contract. By this contract A. had agreed to purchase from B. 300 tons of plow steel of several different kinds and prices, the whole to be taken on or before a certain date. Portions of

said steel were delivered upon demand and specifications furnished by A. An additional demand and specifications for a partial lot were furnished by A. but not complied with by B., who became insolvent, and his property was sold at sheriff's sale, pending the running of the contract. A. (deeming it would be vain), made no further demand on B. under the contract. The market price of steel having advanced at the date of limitation of the contract, A. claimed to set off, against his indebtedness for the steel actually delivered, damages as for a breach by B. in failure to deliver the balance of the steel contracted for.

*Held*, that, under the contract, demand by A. for specific kinds and quantities of steel, specifying the time for delivery, was an essential pre-requisite to delivery; and that the facts that B. had failed to comply with one partial demand, and had become insolvent, did not relieve A. from the necessity of making further demand for specific kinds and quantities, up to the entire quantity agreed to be purchased. Without such specific demands B. could not make a tender, and non constat that such demands, if made, would not have been complied with by B. or by his assignee or creditors.

*Held*, therefore, that (except as to the unfilled partial demand), A. was not entitled to the set-off claimed.

November 10th, 1884.  Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.  PAXSON, J., absent.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term, 1884, No. 208.

This was an attachment execution, issued by the Merchants and Manufacturers National Bank, on a judgment recovered by it against The Siemens Anderson Steel Company, wherein Spratt, Johnston & Co. were summoned as garnishees. The writ of attachment was served January 11th, 1882, to which the garnishees pleaded " nulla bona."

On the trial, before BAILEY, J., the plaintiffs offered in evidence a statement of account, between the garnishees and the defendant, admitted by the garnishees to be correct, showing that on January 12th, 1884, a balance of $1,267 appeared due by the garnishees to the defendant in the judgment, for steel sold and delivered. Plaintiffs then closed.

The garnishees claimed that the defendants in the judgment were indebted to them in a sum exceeding the above balance, and, in support of this claim offered in evidence the following contract, under which said steel had been furnished :

July 13th, 1881.

Siemens Anderson Steel Co., Pittsburgh, Pa.:

Gentlemen—We will give you an order for three hundred tons of plow steel to be taken out on or before March 31st, 1882, at the following prices and conditions, if accepted today :

Slab steel, Alabama, Magnolia and Allen sweeps, and all straight cuts, at 3½c. per pound.

Bull tongues, round point shovels, and all regular turn shovels, at 4c. per pound.

Farquar sweeps, at $4\frac{1}{8}$c. per pound.

Pony points, at $4\frac{1}{2}$c. per pound.

Southern mould boards, at $4\frac{1}{2}$c. per pound.

Scrapers, at $3\frac{1}{2}$c. per pound.

Curved turn shovels, at $4\frac{1}{2}$c. per pound.

Terms—Four months from date of invoice, except for steel shipped prior to September 1st, 1881, and paper for all such so shipped to be given from said date, viz.: September 1st, 1881, all shapes not named in same proportion as above.

SPRATT, JOHNSTON & CO.

*Accepted.*

SIEMENS ANDERSON STEEL CO.

July 13th, 1881.　　　　　　　　　　　Per B. CATLEY.

The evidence offered by the garnishees showed that, in pursuance of demands and specifications, they had received one hundred and nine tons of the steel mentioned in the contract. The remainder of the contract was unfilled. It was admitted that on the 10th day of January, 1882, the personal property of the steel company was sold by the sheriff of Allegheny county. The garnishees proved that after the date of the sheriff sale the market price of steel advanced so that on March 31st, 1882, steel was considerably higher than the contract price.

Prior to the day of the sheriff's sale the garnishees had delivered to the steel company specifications and a demand for "fifteen or twenty" tons of steel. This had not been furnished. The garnishees admitted that they had never furnished specifications or made demand for any of the steel included in the unfinished part of the contract, except the fifteen or twenty tons.

The plaintiffs presented the following points:

1. That under the contract offered in evidence it was necessary for the defendants to specify or order from the Siemens Anderson Steel Company the kinds and amounts of steel required by the defendants under the contract.

Ans. That point is affirmed. The bargain is that they will deliver 300 tons of plow steel, and specifies the different kinds at $3\frac{1}{2}$, 4, $4\frac{1}{8}$, $4\frac{1}{4}$, and $4\frac{1}{2}$ cents, and ends by saying, "All shapes not named in the same proportion as above." Now we have no evidence—and if it were necessary for the defendant's case that we should have, the burden is upon them and they suffer in consequence of their neglect—that there were any other shapes, or that the other shapes would be of a higher value than the lowest priced article mentioned in this contract. It

will be observed, as plaintiffs' counsel have stated, that there is no presumption as to the amount of each of these various articles Spratt, Johnston & Co. might order. They might order a ton, or any small quantity, or none at all probably, of the highest priced steel, and have only needed and ordered the lowest priced. Whether that is a matter of any serious moment is for you to determine.

2. That the defendants' own testimony shows that the only specification or order delivered by them to said company and remaining unfilled was for fifteen or twenty tons of steel, and the jury can only allow to said defendants the difference in price on said amount specified or ordered.

Refused.

3. That the defendants have failed to show any damage other than the difference in price on said fifteen or twenty tons of steel.

Refused.

4. If the preceding points be refused then the court is requested to charge that the defendants, having failed to show that they specified and ordered any shapes or kinds of steel, there is no standard but the price of slab steel by which the jury can estimate the defendant's damages, and the jury can only allow them the difference in the price of slab steel, if any there be.

Answer. That point is affirmed just as it stands, for the reason that this contract provides for a purchase of slab steel, and there being no evidence of what Spratt, Johnston & Co. would have ordered, there is no presumption about it, and you have a right to take it that it was the lowest priced article, and that was slab steel. These various straight cuts were all the same price as slab steel, because they are all put in the same category at $3\frac{1}{2}$ cents per pound. But they would not be entitled in the absence of evidence on their part that they desired and were compelled to purchase higher priced articles than slab steel, to claim for anything but the article which is the basis of the prices of the other articles as has been testified to by the witnesses.

The court charged, inter alia: The measure of damages for loss by reason of the failure to deliver the balance of the steel would be the difference, if any there be, in the market price of slab steel at the time of the default, and the price of slab steel in the contract. That would be a matter that you will determine under the testimony if you find that there was any difference when this default occurred. If slab steel was more expensive and higher priced in the market than $3\frac{1}{2}$ cents a pound, then the difference would be the amount of damage to these defendants, and that amount you will allow. If that

amount be in excess of $1,200, then your verdict would be for the defendants. If there be no difference in the price then the defendants would have suffered no loss; they could have gone into the market and made themselves whole and no loss would have accrued to them, and your verdict would be for the plaintiff for $1,200, or whatever the balance is with interest.

Verdict for defendant (garnishees) and judgment thereon. The plaintiff took this writ of error, assigning for error the answers to their points as above, one of the specifications of error being as follows: " 3d. The action of the court in affirming the plaintiff's first point, and refusing to charge as requested in the second and third points tended to mislead the jury as to the law."

*George Shiras, Jr.*, (with him *C. C. Dickey* and *George Shiras, 3d*,) for the plaintiffs in error.

*John S. Ferguson*, for the defendants in error.

Mr. Justice CLARK delivered the opinion of the court, January 19th, 1885.

The defendants in error, Spratt, Johnston & Co., were summoned in an attachment execution, as garnishees of the Siemens Anderson Steel Company. At the trial, they produced a statement of their account, which was admitted to be correct, showing that at the date of the service of the writ, they were indebted to the steel company in the sum of $1,267. The indebtedness exhibited by this account was for plow steel sold and delivered, under a written contract, in the words and form following, viz:

July 13th, 1881.

Siemens Anderson Steel Co., Pittsburgh, Pa.

Gentlemen—We will give you an order for three hundred tons of plow steel, to be taken out on or before March 31st, 1882, at the following prices and conditions, if accepted to-day:

Slab steel, Alabama, Magnolia and Allen sweeps, and all straight cuts, at $3\frac{1}{2}$c. per pound.

Bull tongues, round point shovels, and all regular turn shovels, at 4c. per pound.

Farquar sweeps, at $4\frac{1}{8}$c. per pound.

Pony points, at $4\frac{1}{2}$c. per pound.

Southern mould boards, at $4\frac{1}{4}$c. per pound.

Scrapers, at $3\frac{1}{2}$c. per pound.

Curved turned shovels, at $4\frac{1}{4}$c. per pound.

Terms—Four months from date of invoice; except for steel

shipped prior to September 1st, 1881, and paper for all such so shipped, to be given from said date, viz: September 1st, 1881; all shapes not named, in same proportion as above.

SPRATT, JOHNSTON & CO.

*Accepted.*

SIEMENS ANDERSON STEEL CO.

July 13th, 1881.          Per B. CATLEY.

At the time of the service of the attachment, on the 11th January, 1882, one hundred and nine tons, only, of the steel mentioned in the contract had been received, and this had been delivered upon demand, and according to specifications furnished to the company by the garnishees.

On the 10th January, 1882, the personal property of the steel company was sold upon execution, by the sheriff of Allegheny county; prior to the day of sale, however, the garnishees, had delivered to the steel company an order and specification for 15 or 20 tons of steel, under the contract, which order was never filled; it is admitted that no other or further demand or specification has, at any time, been made or furnished. The value of steel advanced, and on 31st March, 1882, was considerably higher than the contract price. The garnishees, therefore, claimed to recover or to recoup damages, not only for the non-delivery of the 15 or 20 tons, for which specifications had been delivered, but for the whole amount covered by the contract, and not yet received. The plaintiffs contend, that the garnishees failed to show any damage, other than the difference in price on the 15 or 20 tons.

The court below sustained the garnishees' contention, and directed the jury, to ascertain the loss upon the whole remaining undelivered portion of the steel. It appears from the evidence that slab steel is the material from which the various shapes, recited in the contract, are cut; that an advance upon it necessarily implies a corresponding advance upon the full line of shapes taken from it; slab steel was, therefore, taken as the basis of the assessment, and the measure of damages was held to be the difference between the market price, at the time of default, and the contract price.

The case stands, as between the present parties, precisely as if the Siemens Anderson Steel Company were plaintiffs in this suit, and Spratt, Johnston & Co., defendants. The Merchants and Manufacturers National Bank, under the attachment, stand in the place of the steel company; if Spratt, Johnston & Co. have the right to set off damages for non-delivery of the whole unfinished part of the contract, as against the Siemens Anderson Steel Company, they have the same rights as against the bank.

It seems clear from the nature and terms of the contract, that it was necessary for the defendants not only to specify or order from the steel company the particular kinds or amounts of steel required, under the contract, but to designate the time of the delivery. Spratt, Johnston & Co. were to be the actors, they were to demand and specify the articles they required, and until then the parties to deliver could be in no default; they had the right to demand fulfilment of the contract on any day within the specified limit. The contract is dated July 13th, 1881, and the three hundred tons of plow steel were to be taken out on or before March 31st, 1882; but the particular time or times for delivery, within the period specified, as well as the selection of the articles named, was at the option of the buyer. If that option was not exercised within the period, the right to exercise it was gone; there was no agreement to deliver the articles afterwards at the price agreed upon. The obligation of the contract being mutual, the steel company might, after the expiration of the time, have been entitled to damages for a loss resulting from a falling market, but the company was not bound to tender a performance, in the absence of a demand, excepting, perhaps, for the purpose stated.

The contract in suit is, in some respects, similar to that declared upon in Hamilton v. Calhoun, 2 Watts 139. That was an action of covenant, brought by Jane Calhoun against Hugh Hamilton, to recover damages for non-performance of articles of agreement, by which, in consideration of a release of dower, Hamilton covenanted to pay her "the sum of $33.33 annually, during her natural life; $10 of which is to be paid in cash, the residue or $23.33 to be paid in trade, according to her wants, to wit, grain, meat, hay, &c., at market prices of any and all such articles as she receives each and every year." Mr. Justice ROGERS, delivering the opinion of the court, says: "The contract is for the delivery of the grain, meat, hay, of a stipulated value, as they may be wanted for the support of the widow. She may elect what part she will receive in grain, what in meat, and what in hay, or whether she will receive the whole in the one or the other article, or in any other commodity, the product of the farm. It cannot be the duty of Hamilton to make a tender, for, until she makes a demand, it is impossible for him to know what to tender, or in what quantities or at what times." Applying the rule here stated, it was plainly the buyers' right to elect what they would receive; a tender in " Magnolia slabs," " Bull Tongues," or " Pony Points," might well be refused upon the ground that these particular shapes had not been designated for delivery. Without such designation, therefore, there could be

no delivery of the steel, no default on part of the company, and therefore no damages sustained by the garnishees: Wheeler & Wilson M'f'g Co. *v.* Teetzlaff, 53 Wisc. 211; Wharton Cont. 576; Lobdell *v.* Hopkins, 5 Cowen 516; Barr *v.* Myers, 3 W. & S. 299.

It is said, however, that as there was in fact, an order and specification delivered for fifteen or twenty tons of steel under the contract, which the company had failed or refused to fill, the company having subsequently become insolvent, the necessity for further designation was thereby dispensed with. It is admitted that bankruptcy or insolvency alone does not establish such proof of incapacity to perform as would justify the garnishees in treating the contract as broken, and it is difficult to determine how the failure to deliver the fifteen or twenty tons, taken alone or along with insolvency, can be considered as a refusal to deliver the whole. No greater significance or effect can be given to such partial default than it necessarily implies. The part demanded may have been of a kind difficult, perhaps impossible at the time, to provide, but *non constat*, that further orders may be for that kind, or may not be supplied; the default may result from a merely temporary suspension or derangement of business; a further demand may, by assignment of the contract or otherwise, be fully provided for, or creditors may intervene through a receiver and provide means of compliance, in order that they may realize the avails of the contract: Southwick *v.* Bank, 84 N. Y. 421; Wharton on Cont. 576.

We are of opinion, therefore, that the court erred in refusing the second and third points submitted by the plaintiffs.

The judgment is reversed and a venire facias de novo awarded.