# David *v.* William Whitmer & Sons, Inc., Appellant.

*Contract—Sale—Breach—Damages for nondelivery.*

1. Ordinarily the measure of damages for nondelivery by the vendor of goods sold, is the difference between the contract price or so much thereof as remains unpaid, and the market value of the goods at the time and place appointed for delivery, and in the absence of proof of the market value at the time and place of delivery, the vendee fails to show any damages at all; but the vendee cannot wait over six months after the breach and then go into the market and claim the difference in the price then paid and the contract price as damages; nor can the vendee claim as the basis of damages purchases made by his own vendees to supply the goods which he could not deliver on account of the plaintiff's breach of contract.

2. A purchaser of goods cannot claim as an element of damages for the nondelivery of goods loss of anticipated profits where it does not appear that the seller had any knowledge at the date of the contract of any contracts between the purchaser and his customers. Merely knowing that the purchaser was a dealer and that the goods were purchased to be resold to customers who were unknown to the seller, is not sufficient to make the plaintiff liable for loss of profits.

Argued Dec. 20, 1910. Appeal, No. 192, Oct. T., 1910, by defendant, from order of C. P. No. 5, Phila. Co., March T., 1910, No. 3,596, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Lester W. David, trading as Lester W. David Company, to use of Lester W. David Company v. William Whitmer & Sons, Inc. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit for breach of contract.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*M. Randall,* with him *Milton C. Work,* for appellant.—
The facts recited in the affidavits of defense bring the case

within the well-established principle that damages such as may be fairly supposed to have entered into the contemplation of parties to a contract may, when established, be recovered: Kinports v. Breon, 193 Pa. 309; Wilson v. Wernwag, 217 Pa. 82.

*Percival H. Granger,* with him *J. Howard Reber,* for appellee.—It is submitted that there is nothing to take this case out of the ordinary rule that the measure of damages for nondelivery by a vendor of goods sold is the difference between the contract price, or so much thereof as remains unpaid, and the market value of the goods at the time and place appointed for delivery; and as the defendant has failed to show the market value at the time and place of delivery it has shown no damage at all: Kinports v. Breon, 193 Pa. 309; Forsyth v. Palmer, 14 Pa. 96; Keystone Drilling Co. v. Stahl, 17 Pa. C. C. Rep. 498; Sherman v. Roberts, 1 Grant (Pa.), 261; Haak v. Wise, 2 W. N. C. 689; Pennypacker v. Jones, 106 Pa. 237; Phila., etc., R. R. Co. v. Howard, 54 U. S. 307; Clyde Coal Co. v. R. R. Co., 226 Pa. 391; Thol v. Henderson, L. R. 8 Q. B. Div. 457.

OPINION BY MORRISON, J., March 3, 1911:

This is an action upon a book account to recover the sum of $682.71, with interest, for lumber sold and delivered by the plaintiffs to the defendant. The defendant filed an affidavit of defense and later a supplemental affidavit, and on motion and argument, the learned court below granted judgment in favor of the plaintiffs because of the insufficiency of the affidavits of defense. There is no denial that the plaintiffs' declaration showed a good cause of action, nor is it denied that the defendant received the lumber claimed for and at the price stated. The defense to the claim is a set-off arising out of a failure on the part of the plaintiffs to deliver about thirty cars of shingles which the plaintiff had agreed to sell and deliver to the defendant, but the plaintiff was not limited in time as to the delivery of said shingles for the reason

that there was at the time of the contract a large shortage
of cars for the shipment of such merchandise from Seattle
east to Newark where the defendant had its place of busi-
ness.  The defendant alleges that in April, 1907, the plain-
tiffs could have obtained cars to make delivery of the
shingles as per agreement, but they refused to do so and
defendant was obliged to go into the open market and pur-
chase shingles to replace those which were not delivered
and that the said plaintiff company was notified that de-
fendant would hold them liable for any damages by reason
of a breach of their contract.

First: It must be conceded under the authorities that
ordinarily the measure of damages for nondelivery by
the vendor of goods sold is the difference between the
contract price, or so much thereof as remains unpaid, and
the market value of the goods at the time and place ap-
pointed for delivery; and in the absence of proof of the
market value at the time and place of delivery, the vendee
fails to show any damages at all.  The time for delivery,
if not provided for by the contract, becomes, for the pur-
poses of the above rule, the time of lawful demand for
performance: Lewis & Sons v. Carradan, 1 Yeates, 37n
(opinion by McKEAN, C. J.); Fessler v. Love, 48 Pa. 407
(opinion by THOMPSON, J.); Merchants & Manufacturers
Nat'l. Bk. v. Spratt, 108 Pa. 97 (opinion by CLARK, J.);
Kinports v. Breon, 193 Pa. 309 (opinion by FELL, J.).

 Second: There is nothing in the affidavits of defense
showing that the plaintiffs at the time of contracting with
the defendant in respect of the shingles had any knowledge
of the contracts made by the defendant with its customers,
and without such knowledge the plaintiffs cannot be held
liable for defendant's loss of anticipated profits.  Merely
knowing that the defendant was a dealer and that the
shingles were purchased to be resold by defendant to its
customers, the latter being unknown to the plaintiff, is not
sufficient to make the plaintiff liable for loss of profits:
Sherman v. Roberts, 1 Grant, Pa. 261; Eckel v. Murphey,
15 Pa. 488; Haak v. Wise, 2 W. N. C. 689.  In 24 Am. &

Eng. Ency. of Law (2d ed.), 1155, it is said: "The profits which the purchaser could have made by a resale of the property in case it had been delivered by the seller are not an element of damages, when the seller at the time of the sale was not informed of such intention or contract for resale, as such profits cannot be considered as within the contemplation of the parties at the time of the sale." Kinports v. Breon, 193 Pa. 309; Pennypacker v. Jones, 106 Pa. 237; Clyde Coal Co. v. Pittsburg & Lake Erie R. R. Co., 226 Pa. 391. In the syllabus of the latter case we find the following: "Profits arising from a subsequent contract though made on the faith of the original contract and capable of definite ascertainment, are not recoverable in an action for the breach of the original contract.

"Where a railroad company contracts with a coal mining company to furnish cars at a particular point and fails to do so, the coal company in an action for the breach of the contract, is not entitled to recover profits that would have accrued on a contract subsequently made, to deliver a definite number of tons per day to a purchaser, if it appears that the railroad company had no knowledge at the time it made its agreement to deliver cars that the coal company contemplated the making of such a contract." That case clearly holds that, "at the time the original contract was entered into, it does not appear that the defendant was notified that the plaintiff had any contract with any person or company to furnish coal, or that the contract was executed on the part of the plaintiff with the view of furnishing any certain or definite amount of coal to anyone or had any agreement to do so." We think that case and many others clearly hold that there must be more than mere knowledge on the plaintiffs' part, in the present case, that the defendant intended to sell the shingles to third persons, who were unknown to the plaintiff, at the time they entered into the contract.

In 8 Am. & Eng. Ency. of Law (2d ed.), 593, it is said: "There must be, it seems, according to the doctrine of these cases, in addition to the mere knowledge of the col-

lateral contract, from whatever source derived, something
to show that the defendant made himself in a sense respon-
sible for the performance of the collateral contract, or
agreed to liability for the loss therein as the measure of
damages." In the same book on page 594, on the author-
ity of Michigan cases, it is said: "In this connection it has
been said there must in every case, be something in the
terms of the contract, read in the light of surrounding cir-
cumstances, which shows an intention on the part of the
vendor to assume an enlarged engagement, a wider re-
sponsibility than is assumed by the vendor in ordinary con-
tracts for the sale and delivery of merchandise:" citing
Clark v. Moore, 3 Mich. 55; Cuddy v. Major, 12 Mich.
368.

The appellant's counsel cites Kinports v. Breon, 193
Pa. 309, and Wilson v. Wernwag, 217 Pa. 82, but we think
the opinion of Mr. Justice MESTREZAT in Clyde Coal Co.
v. Pitts. & Lake.Erie R. R. Co., 226 Pa. 391, clearly shows
that the doctrine of those cases does not support the appel-
lant's contention.

Third: Another difficulty in the appellant's attempt to
set off damages growing out of the contracts made by it
for a resale of the shingles is that the appellant did not go
into the open market and purchase shingles at or near the
time of the plaintiffs' alleged breach of contract, but sev-
eral months thereafter, to wit, in the month of November,
1907, and the early part of 1908. It will be noted that the
appellant contends that the embargo as to freight cars
was removed in April, 1907, and that under the agreement
it was then the duty of the plaintiffs to deliver the shingles.
Assuming this to be true, the defendant ought then to
have gone into the open market and purchased the shingles
and if it suffered loss thereby, it would have been in posi-
tion to claim the same as damages, if it sustained its con-
tention that the plaintiffs were liable at all for damages on
defendant's collateral contracts. But the affidavits of de-
fense do not allege that the market value of shingles at
the time of the alleged breach of plaintiffs' contract was

any different from the contract price. We know of no authority in such a case sustaining the defendant in waiting over six months after the breach and then going into the market and purchasing shingles and claiming the difference in the price paid and the contract price as damages. If the plaintiffs were bound to deliver the shingles in April, 1907, and failed to do so, the defendant ought to have acted promptly in fixing the amount of damages it sustained.

A large portion of the damages claimed by defendant is made upon the basis of purchases made by the defendant's vendees to supply shingles which the defendant alleges it could not deliver on account of the breach of this contract by the plaintiffs. But we do not think the defendant can set off such damages against the plaintiffs' claim. We do not understand how the plaintiff can be responsible for the acts of a large number of persons, strangers to the plaintiffs, who purchased shingles in the open market on account of the defendant's failure to deliver the same on its contracts with them.

The supplemental affidavit avers that upon learning of the removal of the embargo in April, 1907, the defendant notified the plaintiff thereof and of its contracts with its customers, and that the defendant would go into the open market and purchase similar shingles unless the plaintiff made delivery, but that the plaintiff still refused to make delivery. It therefore appears that the breach occurred at or about that date and then was the time for the defendant to go into the market and purchase the shingles. We do not understand the defendant to contend that it could not have purchased the shingles at or about the time of the breach.

Upon due consideration of the affidavits of defense we are of the opinion that the facts therein averred do not present a legal defense to any part of the plaintiffs' claim, and the assignments of error are, therefore, all dismissed, and the judgment is affirmed.