(102 App. Div. 138.)

SNELL v. REMINGTON PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. March 1, 1905.)

1. CONTRACTS—BREACH—DAMAGES.

Where, in an action for breach of a lumbering contract, no general market price was shown covering the particular work done by plaintiff, which might be used as a basis for fixing damages, he was entitled to fix and determine his loss and damages by evidence of what it would have actually cost him to have performed his contract, showing in such manner the apparent profits which he would have realized.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 291, 332, 335; vol. 33, Cent. Dig. Logs and Logging, § 53.]

2. SAME—PROSPECTIVE PROFITS.

In an action for breach of a lumbering contract, whereby defendant was to furnish a certain quantity of logs to be sawed, a failure in ascertaining plaintiff's prospective profits to consider any depreciation and deterioration in the mill property from wear and tear, or to account for the time which plaintiff was enabled to spend at other employment, requires a reversal of the referee's finding.

3. SAME—ENTIRE CONTRACTS.

A lumbering contract providing for the taking and driving the timber to a particular place, and the treatment of portions thereof in a different manner, was entire, and it was improper in estimating plaintiff's

damages on a breach to consider his rights under a clause relating to the sawing without taking into account his obligations under the other clauses.

Appeal from Judgment on Report of Referee.

Action by Irving Snell against the Remington Paper Company. From a judgment of the Supreme Court entered upon the report of a referee in favor of the plaintiff and against the defendant reforming a certain written contract entered into between them, and adjudging that the former recover from the latter the sum of $5,201.90 damages and costs. Also from an order entered upon the same day granting an extra allowance of costs to the plaintiff, defendant appeals. Judgment and order reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Elon R. Brown, for appellant.

Myron G. Bronner, for respondent.

HISCOCK, J. This action was brought to recover damages for breach of a lumbering contract, and the referee before whom it was tried has awarded as such damages the profits which he has found plaintiff would have realized from sawing a certain quantity of logs each year for three years had defendant furnished said logs as agreed. We think that the decision of the learned referee rests in part upon erroneous views and conclusions, and cannot stand, and we shall state somewhat at length the facts and reasons which lead us to this decision.

Plaintiff was the owner of a sawmill, and defendant the owner of a large tract of timber land in the county of Lewis. The former and an officer of the latter came together, and agreed upon a contract contemplating the disposition of defendant's timber about as follows: The latter was to cause certain logs, principally hemlock and spruce, to be skidded upon streams leading from its lands to plaintiff's boom and mill. Plaintiff, at a price of 35 cents a thousand for driving and $30 per year for placing the same in his boom, was to drive this timber down the streams to his boom, and then was to take per year 2,000,000 feet of certain logs, cut it into pulp wood in his sawmill, and place the same on board the cars at a price of $2.50 per thousand feet board measure; also was to take certain other logs good for pulp wood, and not requiring to be sawed, from the river, and place the same upon the cars at a price of $1 per cord; also was to take all of the hemlock logs cut and delivered by defendant at $3.25 per thousand feet. The substance of these provisions is conceded. It has been further claimed by plaintiff in this litigation that the arrangements reached by the parties provided that defendant should supply to plaintiff 2,000,000 feet of logs to be sawed as above each year for a period of five years, and that the hemlock to be purchased by him should be of merchantable quality. The men who formulated this agreement were laymen, and confidently undertook to embody it in a written contract without the aid of a lawyer. They succeeded in pro-

ducing an instrument which is the basis of this litigation, and which is so incomplete, inartificial, and confused that it has been very difficult for the parties, their counsel, and the courts to settle just what it means.

At the outset, and as essential to enforcing his alleged claims, plaintiff sought a reformation of the written contract upon the ground that it did not, in accordance with the intention and agreement of the parties, provide that plaintiff's sawing contract should last for five years, and that the hemlock to be purchased by him should be of merchantable quality. Having secured this reformation, he then proceeded to urge as the substantial claim which has been allowed by the referee that the defendant furnished him 2,000,-000 feet of logs to be sawed for only two years, and made default for the remaining three, thereby depriving him of profits which would have been realized upon his contract. It is to be noted, as giving rise to one of the questions to be hereinafter discussed, that he has only complained because he has been prevented from carrying out this one provision of the contract. He does not find fault because he has not had an opportunity to do the other things provided in the contract.

Defendant's counsel does not seriously contend that the evidence did not warrant the reformation of the contract specified, and there is no dispute upon the evidence that defendant did not furnish logs for the last three years of the term provided. The counsel does claim that defendant's supply of logs under the contract was limited by or conditioned upon the amount which might be cut by one Lamphere under a logging contract with it. We think, however, that the referee was justified in finding against this interpretation of the contract, and therefore pass to a consideration of the rights of the parties upon the theory that this branch of the contract required defendant to supply plaintiff with 2,000,000 feet of logs to be sawed and placed on board the cars each year for the period of five years at $2.50 per thousand, that it failed to do this for three years, and that plaintiff is entitled to recover proper damages. The referee fixed these damages at $2,875.43, and this sum, with interest, constitutes the bulk of the judgment.

Proceeding upon the theory indicated, and eliminating various other objections urged by appellant's counsel, we still have left for consideration the questions whether the referee has correctly measured plaintiff's damages under the sawing provision standing by itself; and, secondly, whether it was proper for him to determine plaintiff's rights and profits under this provision alone, rather than under all of the provisions and engagements of the contract taken together, and some of which it is insisted would have brought him losses, rather than profits. In arguing the first question stated, it is said that the referee should have fixed plaintiff's damages by finding the difference between the contract price of $2.50 per thousand and the ordinary market price or value of doing such work as that in question, instead of by subtracting from plaintiff's contract price the estimated cost which would have been incurred in performing the work, as has been done; also that, even if this method adopted

by the referee was correct, he has not properly or completely ascertained and computed the cost and expense which plaintiff would have sustained in doing the work, and has therefore found a larger profit and resultant damages than were warranted. We think that the first objection to the course pursued by the referee is not well founded. There is no dispute about the general rule which covers actions for damages alleged to have resulted from a breach of an executory contract. Where the work to be performed or the article to be furnished has a well-defined current market value, the claim of the party injured against the one having defaulted is measured by the difference between the price contracted for and such market valuation or price. It is, however, an equally well-settled rule that, where there is no market price or valuation applicable to the article or the labor covered by the contract which may be used as a basis for fixing damages against a defaulting party, the party who has been injured may fix and determine his loss and damages by evidence of what it would have actually cost him to have performed his contract, showing in this manner the apparent profit which he would have realized. Masterton v. The Mayor, etc., 7 Hill, 61, 42 Am. Dec. 38; Kelso v. Marshall, 24 App. Div. 128, 48 N. Y. Supp. 728; Todd v. Gamble, 148 N. Y. 382, 390, 42 N. E. 982, 52 L. R. A. 225. It seems to us that upon all of the evidence presented plaintiff brought his case within the latter rule. Some testimony was adduced with reference to prices charged for doing certain kinds of work somewhat similar to that to be performed by plaintiff in sawing these logs, but it is quite apparent that the value of such services was so dependent upon the circumstances of each case as the amount to be sawed, the length of the contract, the extent to which the logs must be handled and carried, and other things, that it would be unjust and improper to say that there was any general market price which covered just the particular work to be done by plaintiff. We think, however, that appellant's objection to the manner in which the referee computed the cost which would have resulted to plaintiff in carrying out the contract if defendant had not made default is well founded. This estimated cost has been included in four items. The expense of taking the logs from the water, sawing and piling them, and transferring them to the cars as provided by the contract has been estimated at $1.60 per thousand, and no fault is found with this computation. The referee finds that the capacity of plaintiff's mill was such that he could have sawed and turned out about 4,000,000 feet of logs per year, and therefore he charges to plaintiff, on account of the estimated expense of carrying out his contract, one-half of insurance, taxes, and repairs on his mill for the years in question, one-half of the interest at 6 per cent. upon the value of the plant at $8,000 for the same years, and one-half the cost of the services for a superintendent of the mill; and the amount so derived, together with the first one mentioned of $1.60 per thousand, constitute all of the cost and expense which has been charged to plaintiff on account of carrying out his contract.

Ordinary observation teaches that it is much easier for a party complaining against a default upon a contract by another to figure out upon paper profits which he would have realized upon performance than to actually realize them when permitted. Estimated and "paper" profits have become familiar as frequently embodying the optimistic hopes and expectations of manufacturers, rather than as indicating actual results which might be safely expected or relied upon. This common experience simply tells us that in a case like this we should scrutinize with much care alleged profits, and be sure that every known element of expense has been charged against them before striking the balance which should be found as damages. It is a matter of such common practice as almost to be a subject of judicial notice for manufacturers in estimating the cost of manufacturing, after charging up all known and ascertainable items of cost and expense, to add an arbitrary percentage to cover the cost which cannot be specifically stated or computed. Without pursuing this policy in this case, however, there are two items of expense which should be charged against plaintiff's cost of carrying out his contract which have been overlooked by the referee. The latter has included in his estimate a certain amount spent each year in repairs upon the mill. That item, as we understand from the evidence, covers the expense of replacing some specific part of the machinery or plant which had become defective and useless. In addition to specific parts thus becoming defective and necessitating repair or replacement, it is apparent that every plant undergoes each year a general and universal depreciation and deterioration from wear, tear, and age which is not fully offset by specific repairs, but which must be charged off against the current business conducted in the plant. The evidence in this case shows that "this class of property is short-lived"; that all sawmill property is "very perishable property," and "wears out quickly, and has to be duplicated every little while, something." In a term of years shorter or longer plaintiff's mill and tramway would become largely depreciated and worn out, and the only method in which he could meet and provide for this contingency would be by charging up each year against the current business done in his plant a certain percentage of this depreciation. This has not been done, and therein we think error was committed. In the next place, the referee has not charged up to the expense of doing this work anything for plaintiff's own time in overseeing the mill and the work. Plaintiff's evidence shows that after making the contract he was at the mill nearly half the time. Of course, if the contract had been carried out, as the principal he would have received the profits thereon, if any, as compensation for his time; but as long as the contract was not carried out there is no reason why there should not be charged up against any estimated profits upon it a proper proportion of the time which would have been spent by him in overseeing the work of the mill contracted for by defendant. Owing to the fact that the contract was not carried out, plaintiff was relieved from spending any time upon it, and enabled to give his attention to something else. Defendant therefore is entitled to

have charged up to the profits, or, what amounts to the same thing, credited upon plaintiff's alleged loss, his time which has thus been saved. . .

We come finally to a consideration of defendant's objection that the referee has considered simply plaintiff's rights and prospective profits under the clause of the contract relating to the sawing of 2,000,000 feet of logs per year, and has not at all taken into account his obligations under other clauses of the contract which required him to do other things. Evidence was introduced which tended to show that the hemlock logs agreed to be purchased by plaintiff at $3.50 per thousand were worth less than that; also that there would have been a loss in the performance by plaintiff of his engagement to drive logs and to take certain pulp wood out of the river and load it upon cars without sawing. And the defendant urges that the referee should have computed plaintiff's profits or losses upon the entire contract, including these possibly advantageous provisions, rather than upon the portion alone which was most favorable to plaintiff. The referee pursued the course adopted by him because, as he determined, the contract was not an entire one, and because the different clauses relating respectively to the performance of different acts were entirely disconnected and independent, and therefore a consideration of the rights of the parties under one was not related to and did not involve rights under others. We think that this was an erroneous interpretation of the contract, and that the latter so covered an entire subject that for the purposes of such an action as this the rights of a party should be judged by a consideration of the entire instrument, rather than of a portion thereof as a disconnected part. Defendant was the owner of timber cut or to be cut and disposed of in pursuance of one general plant. It therefore made this contract with plaintiff, which, in however an inartificial and confused manner, provided for his taking and driving the timber to a certain place where one kind of lumber was to be taken and treated in one way, another in a different manner, and a third to be purchased by plaintiff himself. This is the interpretation of the contract as outlined and ∘ summarized in plaintiff's complaint and in his own evidence. The contract thus providing for the entire and complete treatment of the undertaking in hand, did not become divided into separate and distinct contracts simply because it provided that different things were to be done with different portions of the property which constituted the entire subject-matter covered. Plaintiff makes as one answer to this contention upon the part of the defendant that the pleadings did not present any such view, or allege any prospective loss by plaintiff upon certain portions of the contract. Without attempting to determine whether this objection to the pleading might be successfully made in a timely and proper manner, it is sufficient to say that upon the trial now under review that question does not appear to have been raised. Evidence was given without objection tending to show that plaintiff could not have performed certain of the engagements covered by the contract without loss, and, as appears by the opinion of the referee, defendant's

·claims upon this branch of the case were dismissed, not as improper subjects of consideration, but for the reason, already stated, that the interpretation of the contract necessitated their disallowance.

For the reasons stated, we think that the judgment appealed from should be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event, upon questions of fact and law. All concur.