## Pearce *v.* Bond, Appellant.

*Contracts—Breach of contract—Assessment of damages—Matter for jury—Instructions.*

Where damages are unliquidated, and cannot be liquidated with absolute certainty, it is a matter for the jury, and not for the court, to determine such damages, in the light of all of the evidence before them, nor are they bound to accept the testimony of the plaintiff as to his probable damage, even though it is uncontradicted, but they can regard it as an approximation, and are not precluded from returning a verdict for a less amount, if in their judgment, the evidence warrants it. And it is error for the court in such a case, to give instructions to the jury, that if they believe the testimony of the plaintiff as to the breach of the contract, they must find a verdict in his favor for the amount claimed.

*Contracts—Breach of contract—Assessment of damages—Reduction by court.*

Where, in an action for breach of a contract for the cutting of timber, the trial judge erroneously instructs the jury as to the measure of damages, the court cannot afterwards reduce the verdict to what it regards as the proper amount, but should award a new trial.

The original verdict having been rendered under erroneous instructions, any reduction of it is based on false premises and the defendant is entitled to have the case resubmitted to a jury.

Argued March 3, 1919. Appeal, No. 25, March T., 1919, by defendant, from judgment of C. P. Luzerne Co.,

Statement of Facts—Opinion of the Court. [71 Pa. Superior Ct.

Oct. T., 1914, No. 489, on verdict for plaintiff in case of Levi C. Pearce v. John A. Bond. Before ORLADY, P. J., PORTER, TREXLER, WILLIAMS and KELLER, JJ. Reversed.

Assumpsit on a written contract to cut timber. Before WOODWARD, J.

The facts are stated in the opinion of the Superior Court.

Verdict of plaintiff for $1,232, which the court subsequently reduced to $652.75 and entered judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, quoted in the opinion of the Superior Court, and refusal to grant a new trial.

*W. Alfred Valentine,* and with him *William E. Elmes,* for appellant.—The court erred in its instructions as to the measure of damages: Imperial Coal Co. v. Port Royal Co., 138 Pa. 45; Wilson v. Wernwag, 217 Pa. 82; Pennypacker v. Jones, 106 Pa. 237; Clyde Coal Co. v. P. & L. E. R. R. Co., 226 Pa. 391.

The defendant was entitled to a new trial: Mecks v. Pocono Mt. W. S. Co., 203 Pa. 13; Clouser v. Patterson, 122 Pa. 372; Lehr v. Brodbeck, 192 Pa. 535; Hunter v. Bremer, 256 Pa. 258; Fortney v. Breon, 245 Pa. 49.

*Rush Trescott,* for appellee.

OPINION BY KELLER, J., April 21, 1919:

The assignments of error in this appeal raise the question whether the trial judge was correct in his instructions to the jury on the measure of damages for breach of contract relative to the sawing of all the timber on a certain tract of land, and also his right to calculate the amount which the plaintiff was entitled to recover and reduce the verdict to that sum, instead of granting a new trial, after he had become convinced

that the verdict returned by the jury under the instructions of the court was erroneous and excessive.

The contract between the parties provided that the defendant should cut the timber and furnish sufficient logs on the skidway to keep the mill in operation ten hours every day, unless prevented by fire, ice, flood, act of God or public enemy, or other happening beyond his control, and that the plaintiff should saw the logs into lumber until all the merchantable timber on the tract was sawed out, unless prevented by fire, ice, flood, act of God, public enemy, or other happening beyond his control, for which he was to receive three 50/100 dollars for each one thousand feet of saleable lumber.

The verdict of the jury in favor of the plaintiff established the fact that the contract had been broken by the defendant, without fault on the part of the plaintiff, and that the latter was entitled to damages for such breach.

The plaintiff had testified that the fair average daily capacity of the saw mill was five thousand feet per day: "I sawed over on it and I sawed less on it"; and that the daily cost of operating his mill was $6.50 per day: "I paid Stackhouse $3 and the other men $1.75, it takes two men." He also testified that his mill had been idle, on account of the failure of the defendant to furnish logs on the skidway, for one hundred and forty days, before he quit sawing and removed his mill from the tract. The defendant, although in his affidavit of defense. he denied that the actual output of the plaintiff's mill averaged 5,000 feet a day and that the per diem expense of operation was only $6.50, offered no testimony on the subject. He did produce testimony, however, that the merchantable standing timber on the tract at the time the plaintiff removed his mill was about 244,293 feet.

The learned trial judge, in his charge to the jury on the question of damages, said: "He [the plaintiff] said that if the defendant had fulfilled his part of the agree-

ment that he could have kept his mill busy there, sawing five thousand feet, at $3.50 a thousand feet, which would have been $17.50 a day, and the daily expense would have been $6.50, which would have left him a profit of $11 a day, and that he was prevented from working his mill a hundred and forty days by the action of the defendant, and therefore his loss is $1,540, or eleven times a hundred and forty days, with interest, or damages not to exceed the legal rate of interest, which would bring that claim up to $1,797.18. And if you believe from the credible evidence, the preponderance of the credible testimony in the case, that he was prevented from performing his contract, and that is what he would have reasonably have profited if he had carried it out, then you will find a verdict for the plaintiff for that amount." And, later on: "Now if you believe this testimony of the plaintiff and his witnesses, that he had men to run the mill there, and was only prevented by the action of the defendant in failing to supply logs, and that there was no violation of the agreement on his part, then you should find a verdict for the plaintiff, as I said before, in the sum claimed, because there is no dispute about that being the proper amount." The defendant duly excepted before the jury retired, to the court's instructions as to the measure of damages, as being inadequate and improper. The jury subsequently returned and asked instructions as to whether the plaintiff might recover, or whether they might bring in a verdict for the plaintiff, for less than the full amount of his claim, to which the trial judge replied: "As to the first point, as to whether you may find a verdict for less than the full amount, I say you may, if you believe from the evidence that he was not prevented the whole hundred and forty days by the action of the defendant. In other words, if some of these hundred and forty days he failed to work were due to the causes named in the contract preventing the defendant from furnishing the logs, to wit: ice, flood, or act of God, then you may find a ver-

dict for less than amount; the verdict being based, in either case, on your finding that the mill would saw the five thousand feet if it had plenty of logs, a day, and that the cost would be $6.50, and that the loss of profit therefore would be $11 a day. I believe that answers your questions." To these instructions, the defendant's counsel duly excepted, "in so far as it undertakes to define the measure of damages."

Upon the argument of a rule for a new trial and for judgment n. o. v., the trial judge became convinced that the per diem measure of damages was improper and excessive, because it allowed a recovery in excess of the standing timber left on the tract, and that the damages should have been based on the plaintiff's net profit per thousand feet of lumber, sawed out of the timber standing on the tract when he removed his mill. Instead of granting a new trial, however, he came to the conclusion that "we can arrive at the damages sustained by the plaintiff measured by the proper standard." "Assuming that the jury would have found the amount of standing timber left after the sawing operations were abandoned at the figure given by the witness, Garrison, whose testimony is the only testimony on the subject and is undisputed and comes from a witness apparently qualified to estimate the amount, then the facts being found in favor of the plaintiff, the verdict might have been arrived at as follows: Capacity of mill, 5,000 feet per day at $3.50 per M. $17.50. Cost of manufacture, $6.50. Profit on 5,000 feet, $11. Profit on 1,000 feet,—1/5 of $11 or $2.20. Amount of timber left standing, 244,293 feet at $2.20, $537.44. Which with interest from the 1st day of May, 1914, at 6 per cent., equals $652.72. This would have been the verdict arrived at by the proper measure, if the proper measure of damage had been adopted. We will reduce the verdict to this amount, and if the plaintiff refuses to accept the reduction, we will grant a new trial." The plaintiff

accepted the reduction, and judgment was entered for $652.72.

The learned judge's error seems to have been his conclusion that, because the plaintiff had testified that the average daily capacity of his mill was 5,000 feet and that his daily expense of operation was $6.50 and this was not contradicted by the defendant's witnesses, if the plaintiff was entitled to recover at all, he was, per force, entitled to recover on that basis. He may have been entitled to recover on that basis, but not necessarily so. It was a matter of unliquidated damages, and the amount was for the determination of the jury, not the court: Cope v. Bangor & Portland Traction Co., 39 Pa. Superior Ct. 134. It was their duty carefully to consider the plaintiff's testimony on the subject and give due weight to it; but they had a right, and it was their duty, to consider that his figures were only an approximation, an average; that, as in all such operations, there was the possibility of a break in the machinery, of a shut-down or slackening of work from sickness or absence of employees, or the many other annoyances and interruptions which, in the common experience of mankind, attend such operations. This was not a case where a fixed percentage of profit was provided for in the contract: Wilson v. Wernwag, 217 Pa. 82; nor where the work had been sublet at a definite figure: Smith v. Kaufman, 30 Pa. Superior Ct. 265; nor was it a case where a man contracts to sell goods at a certain price and on breach thereof the purchaser is compelled to go into the open market and buy them, fixing his damages, if his testimony is believed, with mathematical certainty. The damages were unliquidated and could not be liquidated with absolute certainty, nor was it necessary that they should be able to be so calculated. All that was required was, that they should be ascertainable with reasonable certainty: Clyde Coal Co. v. P. & L. E. R. R. Co., 226 Pa. 391; and the plaintiff's evidence furnished the basis by which such dam-

ages could be ascertained with reasonable certainty, but the jury were not bound to accept it as a fixed or liquidated sum merely because his testimony was not contradicted. They had a right to regard it as an approximation, the best the plaintiff could make, but still only an approximation, and were not precluded from returning a verdict for a less amount, if on consideration of the whole case they felt that the plaintiff had not sufficiently taken into consideration all the items of expense, instead of merely the labor cost, as well as the hazards and interruptions incident to all such operations: Snell v. Remington Paper Co., 92 N. Y. Supp. 343; Cornelius v. Lytle, 246 Pa. 205. It was a matter for them and not for the court, and hence it was error for the court to instruct them that, if they believed the testimony of the plaintiff and his witnesses, they should find a verdict for the plaintiff, in the sum claimed. This was accentuated in the answer to the request of the jury for further instructions by saying, in effect, that, while the jury might find that the mill was idle a less number of days than one hundred and forty, whatever number of days they did so find the plaintiff was idle by the defendant's default, he would be entitled to damages at $11 a day; and that it concluded the jury is seen from their inquiry to the court: "If we are obliged to return a verdict according to this claim, whether we can eliminate the interest," and from the fact that they found in favor of the plaintiff for one hundred and twelve days at $11 per day.

So when on consideration of the rule for a new trial the court came to the conclusion that the verdict was erroneous and excessive by reason of the adoption of the per diem measure of damages, the same error was repeated in the attempt to calculate what the verdict of the jury would have been if they had been instructed that the measure of damages was the plaintiff's probable net profits if he had sawed the remaining standing timber on the tract.

It is true that the jury had found that the plaintiff's profit would have been $11 per day; but they had been instructed by the court so to find if they found for the plaintiff. Dividing that by a daily capacity of 5,000 feet, the court fixed the profit per 1,000 feet at $2.20; but the daily capacity of 5,000 feet, used in this calculation, was admittedly an average, an approximation, and the jury had been instructed by the court to find that this was the daily capacity, if they found for the plaintiff. It was not a finding of the jury from the evidence in the case, but a finding under the instructions of the court. Hence it offered no proper basis for reforming the verdict of the jury by the court, for the original error in holding that the testimony of the plaintiff and his witnesses as to his probable profits, being uncontradicted, bound the jury to find in the sum testified by him, if the breach of the contract was not chargeable to him, persisted in the final calculation of the court and the judgment thereon.

. The second, third and fourth assignments of error are sustained. The judgment is reversed and a venire facias de novo is awarded.