## Wolf *versus* Studebaker.

1. S. leased her farm to W. and refused him possession. In an action by W. for damages, S. was permitted to prove that W. engaged in hauling, which was more profitable to him than farming. *Held*, to be error.

2. The defendant might prove that W. declared that he was glad he did not get the farm, he made more money by hauling.

3. What a party declares against his interest in a litigated matter is always evidence.

| | |
|---|---|
| 65 | 459 |
| 126 | 176 |
| 65 | 459 |
| 24 SC | [3]236 |
| 25 SC | [6]169 |
| 65 | 459 |
| 217 | [4] 90 |

[Wolf *v.* Studebaker.]

4. The measure of damages was what W. could have made on the farm.

5. In a hiring for personal service, where a party is dismissed before the end of his term, he is not obliged to seek employment nor perform services offered him of a different nature, in order to recover full damages.

6. Where a disappointed contractor for performance of a specified thing finds something to do of a different nature from his contract, his doing it will not mitigate the damages for the breach of the contract by the other party.

7. Results disconnected with the cause of action or the party sued cannot operate to his advantage.

8. Whatever shall have the effect to mitigate damages must have a proximate relation to the contract.

9. Damages for a breach of contract should be such as may be fairly and reasonably considered, either arising naturally from such breach or such as may be supposed to have been in contemplation of both parties when the contract was made.

10. The damages are fixed by the law of the contract when broken, and cannot be altered by collateral circumstances disconnected with it and from the party occasioning it.

May 11th 1870.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Cumberland county* : Of May Term 1870, No. 45.

This was an action of assumpsit, brought April 22d 1867, by William Wolf against Nancy Studebaker. The cause of action was the breach of a contract of leasing of the farm of the defendant to the plaintiff. The case was tried November 20th 1867, before Graham, P. J. The plaintiff proved a verbal contract, by which the defendant agreed, about the 1st of September 1866, to lease her farm to him on the shares, with some minor stipulations, for one year, commencing on the succeeding 1st of April : that he went with his goods on that day to take possession, and the defendant refused to allow him to enter. He gave evidence of the damage sustained by him in consequence of the breach of the contract.

The defendant offered to prove by Abraham May that plaintiff engaged in hauling for the bridge company, at the river, after the 1st of April 1867, and continued so engaged until late in the fall, and afterwards ; and that such employment was more profitable to him than the lease of the farm, and that he made out of such employment $1000 and upwards : to be followed by proof that plaintiff declared during this time that he was glad that he did not get the farm ; he made more money by hauling ; this for the purpose of showing that he suffered no damage from the loss of the lease.

The offer was objected to, but admitted and a bill of exceptions sealed.

The witness testified : "Wolf was engaged in hauling for the bridge in the summer of 1867 ; he commenced hauling in June, and continued up to the cold weather ; before this he was working

[Wolf *v.* Studebaker.]

lots around; after this he marketed some; Wolf and I looked over his books at one time, and his earnings amounted to about $1000; he hauled after this; he hauled hay to his own stable, and some to Bowman's, in the latter part of March."

The verdict was for the plaintiff for $125.

The plaintiff took a writ of error, and assigned for error the admission of the testimony contained in the bill of exceptions.

*S. Hepburn, Jr.* and *W. M. Penrose,* for plaintiff in error.—The measure of damages is what the plaintiff would have immediately made out of the contract: Hoy *v.* Gronoble, 10 Casey 10. The proximate, not the remote or possible consequences are the measure of damages: Pittsburg Coal Company *v.* Foster, 9 P. F. Smith 365; Adams Express Company *v.* Egbert, 12 Casey 360; Fassler *v.* Love, 12 Wright 410; Fleming *v.* Beck, Id. 312.

*I. Ritner* and *L. Todd,* for defendant in error, cited King *v.* Steiren, 8 Wright 99.

The opinion of the court was delivered, July 7th 1870, by

THOMPSON, C. J.—We have no question before us involving the fact of an agreement between the plaintiff and defendant, by which the latter agreed to let to the former, on the shares, her farm for one year, from the 1st of April 1867. The verdict has settled that fact in favor of the plaintiff. The only question before us, therefore, is that relating to damages for the breach of the contract to give possession by the defendant.

The plaintiff claimed to recover the value of his contract, that is to say, what he might reasonably have made out of it, for his damages. In Hoy *v.* Gronoble, 10 Casey 10, which, like the case in hand, was to recover damages for a failure, on part of the defendant, to deliver possession of the farm which he had agreed to let to the plaintiff to farm on the shares, the rule as to damages is thus stated in the opinion of the court by Strong, J.: "We cannot say, therefore, that the jury were misled in this case by being told that the damages of the plaintiff should be measured by what he could have made on the farm. This was but another mode of saying that he was entitled to the value of his bargain." This, as a rule, does not seem to have been controverted by the defendant. But she was permitted to prove, under objection, in mitigation of damages, by one Abraham May, as follows:—

"Wolf was engaged in hauling for the bridge in the summer of 1867; he commenced hauling in June, and continued up to the cold weather; before this he was working lots around; after this he marketed some. Wolf and I looked over his books at one time, and his earnings amounted to about $1000; he hauled after this; he hauled hay to his own stable, and some to Bow-

man's in the latter part of March; his property consists of a house and stable, and about a quarter of an acre of land; I was at Wolf's sale," &c.

The earnings of this man in this way, it was thought by the learned judge, should to the extent of them mitigate the damages arising from the defendant's broken contract; in other words, the logic seemed to be that because he was an industrious man, he was not within the same rule of compensation that one not so would be. There are undoubtedly cases in which such facts do mitigate damages. Such commonly occur in cases of the employment of clerks, agents, laborers or domestic servants, for a year or a shorter determinate period. But I have found no case where a disappointed party to a contract for a specific thing or work, who, taking the risk from necessity, of a different business from that which his contract if complied with would have furnished, and shifting for himself and family for employment for them and his teams, is to be regarded as doing it for the benefit of a faithless contractor. It seems to me, therefore, that the rule upon which the testimony quoted was admitted was wrested from its legitimate purpose, and applied to an illegitimate one. In 2 Greenlf. Ev., § 261 a, the distinction is marked between "contracts for specific work and contracts for the hire of clerks, agents, laborers and domestic servants for a year or shorter determinate periods." In that case the learned author shows that the defendant may prove, on a breach of the contract, "either that the plaintiff was actually engaged in other profitable service during the term, or that such employment was offered to him, and he rejected it."

There is an evident distinction between such a hiring and a contract for the performance of some specific undertaking. In the one case, the party can earn and expect to earn no more than single wages, and if he gets that, his loss will generally be but nominal. King *v.* Steiren, 8 Wright 99, was of this nature. Whereas, in the other case the loss of the party is the loss of the benefits of the contract he is prepared to perform. In Costigan *v.* The Railroad Company, 2 Denio 609, in a case of hiring for personal service, where the party was dismissed before his term had expired, it was held he was not obliged to seek employment, nor perform services offered him of a different nature from that he had engaged to perform, in order to recover full damages for disappointment. In analogy to this principle, I would say, that where a disappointed contractor for the performance of a specified thing finds something of a different nature from his contract to do, his doing it ought not to mitigate the damages for the breach of his contract by the other party. Indeed there is enough in the difficulty of applying such a rule to discard it. It would necessarily involve proof of everything, great and small, no matter how various the items, done by the plaintiff during the period of the

[Wolf *v.* Studebaker.]

contract, might be, and how much he made in the meantime. It happened in this case, that a witness saw the plaintiff's book, and testifies from it that he had earned $1000. The expense incurred in earning it, he did not see, or if he did, did not disclose. But this single case ought not to furnish a rule in other cases. It cannot be, that results utterly unconnected with the cause of action, and the party sued can be made to tell to his advantage.

It is laid down in every case of damages for a breach of contract, that the loss or injury for which damages are allowable, must be the proximate consequence of the injury. A remote or possible injury is not a sufficient ground for compensation. For a principle so familiar, we need only cite Adams Express Company *v.* Egbert, 12 Casey 360. Is it not, therefore, equally just and logical, that whatever shall have the effect to mitigate damages shall have some proximate relation to the contract?

The rule of damages for a breach of contract laid down by Baron Alderson in Hadley *v.* Baxendale, 26 Eng. L. & Eq. 398, cited in the opinion of my brother Agnew, in Fleming *v.* Beck, 12 Wright 309, namely, that "where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract, should be such as may fairly and reasonably be considered, either arising naturally, according to the usual course of things, from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it," we regard as entirely sound; and we think that that which should mitigate damages in a contract like that we are considering, should be something resulting from the acts of the party occasioning the injury, or from the contract itself. The damages may be said to be fixed by the law of the contract the moment it is broken, and I cannot see how that is to be altered by collateral circumstances, independent of, and totally disconnected from it, and from the party occasioning it.

That part of the offer to show the plaintiff's declarations was properly admitted. What a party declares against his interest in a litigated matter is always evidence. It may serve to show, if it be not regarded as a mere idle declaration, how he estimated his own cause of action, and the jury may give them such weight as they may think they deserve, under all the circumstances of the case. For the reasons given,

This judgment is reversed, and a *venire de novo* is awarded.