# Clyde Coal Company, Appellant, *v.* Pittsburg & Lake Erie Railroad Company.

*Contract—Breach of contract—Damages—Profits.*

1. Profits arising from a subsequent contract though made on the faith of the original contract and capable of definite ascertainment, are not recoverable in an action for the breach of the original contract.

2. For the breach of a contract damages may be recovered for loss of profits, the direct and immediate fruits of the contract itself and ascertainable with reasonable certainty, when they are the natural result of such breach, or which, under the circumstances, the parties may have contemplated at the execution of the contract as the probable result of its breach; but damages for the loss of profits for the violation of a contract may not be recovered where they are uncertain, remote or speculative, or when they grow out of a subsequent collateral or subordinate undertaking which was entered into upon the faith of the principal contract.

3. Where a railroad company contracts with a coal mining company to furnish cars at a particular point and fails to do so, the coal company in an action for the breach of the contract, is not entitled to recover profits that would have accrued on a contract subsequently made, to deliver a definite number of tons per day to a purchaser, if it appears that the railroad company had no knowledge, at the time it made its agreement to deliver cars, that the coal company contemplated the making of such a contract.

Argued Oct. 22, 1909. Appeal, No. 111, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1904, No. 882, on verdict for plaintiff in case of Clyde Coal Company v. Pittsburg & Lake Erie Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for breach of contract to deliver cars. Before BROWN, P. J

At the trial the following offer was made:

Counsel for plaintiff now offer to prove by the witness on the stand and other witnesses, that early in January, 1903, the plaintiff company entered into a contract with the defendant

company, through its vice president, Col. J. M. Schoonmaker, under and by. virtue of which contract the Pittsburg & Lake Erie Railroad Company agreed to supply cars to a hoist or coal elevator, which the plaintiff company proposed to erect on a siding which they had leased at Bunola station, a station upon the line of a branch road controlled by the defendant company. That the contract or arrangement bound the Pittsburg & Lake Erie Railroad to supply at said siding the share or proportion of the cars for distribution which would be supplied to such sidings were they connected with a coal mine upon said railroad, having the rating or capacity of the plaintiff company's mine. That upon the faith of this contract, and with the knowledge of the defendant company, the plaintiff proceeded to erect their hoist at the siding at Bunola station, in the manner provided in the contract. That upon completion of the same, to wit, on May 2, 1903, they called upon the defendant company for a supply of cars, and six cars were in fact placed upon said siding loaded with coal by the plaintiff company and shipped away, in the manner provided by the contract. That prior to this date, the plaintiff company had entered into a contract with the Pittsburg Coal Company for the delivery of coal to that company in the manner set forth in exhibit No. 2, and at a price of $1.47 per ton, being a price which showed a profit over the cost of supplying coal at Bunola station. That this contract was exhibited to the vice president and general manager of the defendant company in the conversations early in May, during which the plaintiff company was endeavoring to get cars for the completion of its deliveries under its contract with the Pittsburg Coal Company. That with the knowledge of this contract, the defendant company broke its agreement with the plaintiff company, and refused to deliver any further cars beyond the first six cars, as mentioned heretofore in the offer.

The plaintiff further offers to show accurately the cost of supplying coal to cars at Bunola siding, the cost of transportation, and the price which would be received for such deliveries in accordance with the contract, and to show the number of cars which they should have received, in accordance with the

schedule of distribution of cars by the Pittsburg & Lake Erie Railroad Company had they been registered as provided in the contract they had with that company, and by these means to show the actual loss sustained by the plaintiff company in not receiving the cars for shipment in accordance with the terms of the contract. This for the purpose of showing with reason-able certainty the profits which have been lost to the plaintiff by reason of the breach of contract sued on in this case. The objection and ruling of the court thereon are as follows:

Objected to as incompetent, irrelevant and immaterial, and identical with the offer heretofore made, upon which the court has already ruled.

Objection sustained and bill sealed for plaintiff. [3]

Counsel for plaintiff further offer to show by this witness, and other witnesses, that at the time the contract made in this case, and sued upon, was entered into, there was great scarcity of coal, and the same was selling at a high price. That every effort was being made to get coal upon the market, and that it was well known to the officials of the defendant company, as well as to all other persons engaged in or connected with the transportation and sale of coal, that coal was being sold at a very high profit over the mining rate or cost of production. That outside of the said contract shown in this case, the plaintiff company could have marketed all its coal, had it received the cars promised it by the defendant company at a considerable profit over and above the cost of supply, and that this fact was known at the time of the entering into of said contract by the officers of the defendant company; and was also well known by them at the time of the breach of said contract. This for the purpose of showing with reasonable certainty the profits which have been lost to the plaintiff company by the breach of the contract, as claimed in this case, and that such profits were within the contemplation of the parties at the time the said contract was made.

The objection and ruling of the court thereon are as follows:

Objected to as incompetent, irrelevant and immaterial. Objection sustained and bill sealed for plaintiff. [4]

Counsel for plaintiff now offers to show by the witness on

the stand, and other witnesses, the execution of the contract, exhibit No. 2 in this case, with the Pittsburg Coal Company, providing for the delivery to that company of 500 tons of coal per day, at $1.47 per ton, f. o. b. at Bunola station, up to September 30, 1903. That the defendant company had a sufficient supply of cars to give to the plaintiff company forty per cent of the capacity of its hoist, which would have enabled the plaintiff to deliver about 240 tons per day, which would have earned a profit of sixty-two cents per ton over the cost of producing and loading the coal at Bunola station. That the defendant company, after delivering six cars on the siding, without legal reason or excuse, and after full knowledge on its part of the making and of the terms of the contract of plaintiff · company with the Pittsburg Coal Company, above referred to, refused to make further deliveries and broke its contract with the plaintiff to supply them with cars on the same basis as other mines situate upon its railroad, being the contract sued on in this case. That as a result of said breach the plaintiff company was unable to make the deliveries provided for in the contract with the Pittsburg Coal Company, and lost the profits which would certainly have been made thereon by such deliveries. That the mine of the plaintiff company being a river mine, and having no other means of transporting coal than the Monongahela river and its water connections, could make no shipment during the months covered by the Pittsburg Coal Company contract, to wit, from May 2, 1903, to September 30, 1903, the said river and its connections being unnavigable for coal deliveries during the said season or period.

That the coal mined or taken out during said period was stacked or piled on the plaintiff company's property, and, as well as the unmined coal, which would have been required to fill the Pittsburg Coal Company contract, remained unsold and undelivered until the ensuing winter, when the stage of water in the river enabled the plaintiff company to resume regular deliveries from its mine by water. That in the meantime the price of coal had fallen from the price fixed by the Pittsburg Coal Company contract, $1.47 per ton, to the price

of $1.00 and less per ton, at which price the coal which the plaintiff would otherwise have delivered to the Pittsburg Coal Company was sold to other parties. The plaintiff offers the contract with the Pittsburg Coal Company in connection with the facts offered to be proved in the foregoing offer, to show the difference in price between the sales made under the contract and the sales of the same coal, as subsequently made to other parties, as the measure of damage in this case, being the loss by it of the profits which would certainly have been made had the contract with the defendant company been observed, and had it been permitted to make the deliveries therein provided for.

Objected to. Objection sustained. Exception. [5]

Verdict and judgment for plaintiff for $5,195.42. Plaintiff appealed.

*Errors assigned* were (3–5) rulings on evidence, quoting the bill of exceptions.

*Thomas Patterson* of *Patterson, Sterrett & Acheson,* with him *Geo. M. & M. J. Hosack,* for appellant.—The plaintiff was entitled to recover for the loss of profits: Wilson v. Wernwag, 217 Pa. 82; Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45.

*George E. Shaw,* of *Reed, Smith, Shaw & Beal,* for appellee.— Profits were properly disallowed: Wilson v. Wernwag, 217 Pa. 82; Wolf v. Studebaker, 65 Pa. 459; Harvey v. R. R. Co., 124 Mass. 421; O'Connor & Co. v. Smith, 84 Tex. 232 (19 S. W. Repr. 168); Kelley v. Miles, 12 N. Y. Supp. 915; Devlin v. New York City, 63 N. Y. 8; Lowenstein v. Chappell, 30 Barb. 241; Bridge v. Stickney, 38 Me. 361; Chicago, etc., Ry. Co. v. Dane, 4 Hand (N. Y.), 240.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

In 1903 and prior thereto the plaintiff company was the owner of about 1,000 acres of coal situate on the Monongahela river, in the Fifth Pool, near Fredericktown, Washington

county. The plaintiff was operating the coal with a fully equipped mine in 1903 and had a capacity for mining and shipping 1,200 tons per day. The mine was not located upon the line of any railroad and the plaintiff had to rely entirely upon water transportation for shipping its coal. During a period of about six months in each year the plaintiff was unable, by reason of the low stage of water, to ship coal from Pittsburg to points south along the Ohio river, but could ship its coal in barges and flats on the Monongahela river from the mine to Bunola, a village situate in the Third Pool of the Monongahela river on the Pittsburg, McKeesport & Youghiogheny railroad, which is operated by the defendant company. Desiring to ship coal to various places in Pennsylvania, Ohio and other states, which it could not reach by water transportation, and also wishing to have facilities for shipping its coal by railroad, the plaintiff company in January, 1903, entered into a verbal contract with the defendant railroad company by which it was agreed that if the plaintiff erected a hoist at Bunola, by means of which, after having transported its coal in barges and flats on the Monongahela river from Fredericktown to Bunola, it would transfer the same to the defendant's cars, the plaintiff should receive cars for the shipment of its coal, and in the matter of car service it should be treated the same as a coal mine located directly upon the line of the defendant's railroad.

Relying upon the performance of the contract by the defendant, the plaintiff, in February 1903, leased a strip of land at Bunola for a period of three years, together with the use of a railroad siding for cars in which its coal was to be loaded for shipment. The plaintiff company also erected a hoist at Bunola for the purpose of lifting its coal out of the boats and placing it on board the cars to be furnished by the defendant company. The construction of the hoist was finished about May 2, 1903, and the defendant company furnished six cars on the Bunola siding to the plaintiff for transporting its coal, but thereafter declined and refused to furnish any more cars. The plaintiff then brought this action to recover damages for the breach of the contract.

The defendant company denies that it entered into any contract or agreement to furnish cars to the plaintiff company at Bunola. On the trial of the cause this was the only question submitted to the jury, which found in favor of the plaintiff. This finding established the existence of the contract as alleged by the plaintiff. The trial judge instructed the jury that if there was a contract the measure of damages would be "the cost of this hoist less its value as dismantled and sold, and the rental loss," which, it was agreed, was $5,067.38. The plaintiff claims that the court erred as to the measure of damages, and that question is raised in the assignments which allege error in sustaining the objection to certain offers of evidence made by the plaintiff on the trial.

In the statement, the plaintiff company avers that relying upon its contract with the defendant, it, on or about April 2, 1903, entered into a written agreement with the Pittsburg Coal Company by which the plaintiff agreed to ship to the coal company all the one and one-fourth inch coal it could load from barges at the hoist at Bunola from the date of the contract to September 30, 1903, at the price of $1.47 per ton; and further that should the plaintiff be able to load any lake coal after September 30 and up to the close of the season of lake navigation for the year 1903, all coal that it should be able to so load should be shipped at the above price. The coal company agreed to take 500 tons of coal per day. In view of this contract, it is averred, the plaintiff increased the force of its mine, made changes in the mine equipment and expended considerable money in preparing to mine and handle the coal required by its contract with the Pittsburg company. The statement avers that by reason of defendant's refusal to furnish the cars for transporting the coal to its destination, the plaintiff lost sixty-two cents per ton profit on each ton of coal which it sold to the Pittsburg company and which it was prepared to ship and deliver to that company in its proportion of cars which the defendant had agreed to furnish it. The aggregate amount of the loss is averred in the statement which the plaintiff claims is, in addition to the cost of the hoist and rental, the measure of its damages in this case.

As stated by the learned counsel for the appellant, the sole question to be determined is whether or not the plaintiff was entitled to recover the profits which it would have made from its contract with the Pittsburg Coal Company. This question is raised by the fifth assignment in which it is alleged that the court erred in excluding the plaintiff's offer of evidence. That offer was to show that the plaintiff had entered into the contract with the Pittsburg company as set out in the statement, that the defendant had a sufficient supply of cars to give to the plaintiff company forty per cent of the capacity of its hoist and would have enabled the plaintiff to have delivered about 240 tons per day which would have earned a profit of sixty-two per cent per ton above the cost of producing and loading the coal at Bunola siding; that as a result of the breach of the contract the plaintiff was unable to make the delivery provided for in the contract with the Pittsburg company, and lost the profits which would certainly have been made by such delivery.

The facts of the case at bar bring it within the class of cases in our own and other jurisdictions in which it is held that profits arising from a subsequent contract which though made on the faith of the original contract and capable of definite ascertainment are not recoverable in an action for the breach of the original contract. The general rule is well stated in the leading English case, Hadley v. Baxendale, 9 Exch. 341; s. c., 5 Eng. Rul. Cases, 502, where it is held that "the amount of damages recoverable from a carrier is such as would naturally result from the breach of the contract, whether as the ordinary consequence of such a breach, or as a consequence which may, under the circumstances, be presumed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." This case is cited and the rule is approved in our own cases of Fleming v. Beck, 48 Pa. 309, and Wolf v. Studebaker, 65 Pa. 459. The same doctrine is announced by STRONG, J., in Adams Express Company v. Egbert, 36 Pa. 360, wherein it is said (p. 364): "It is doubtless true, that in all actions for the breach of a contract, the loss or injury for which damages are sought to be

recovered, must be a proximate consequence of the breach. A remote or possible loss is not sufficient ground for compensation. There is no measure for these losses which have no direct and necessary connection with the ·stipulations of the contract, or which are dependent upon contingencies, other than the performance of the contract, and which are therefore incapable of being estimated. With no certainty can it be said that such losses are attributable to the wrongful act or omission of him who has violated his engagement. But on the other hand, the loss of profits or advantages, which must have resulted from a fulfillment of the contract, may be compensated in damages, when they are the direct and immediate fruits of the contract, and must therefore have been stipulated for, and have been in the contemplation of the parties when it was made."

The leading American case on the subject is Masterton v. Mayor of Brooklyn (N. Y.), 42 Am. Dec. 38. It is there held that the measure of damages for a breach of an executory contract includes loss of profits growing immediately out of the contract which would have been realized from its full performance, but not loss of profits or other damages arising out of collateral undertakings entered into on the faith of the contract. NELSON, C. J., delivering the opinion of the court says, inter alia (p. 68): "It has accordingly been held that the loss of any speculation or enterprise in which a party may have embarked, relying on the proceeds to be derived from the fulfillment of an existing contract, constitutes no part of the damages to be recovered in case of breach." The chief justice shows by a quotation from Pothier that the same rule obtains in the civil law. ·The case is cited and approved in Massachusetts in Fox v. Harding, 61 Mass. 516, where it is held that in an action for the breach of a special contract, the plaintiff may recover as part of his damages such profits as would have accrued to him from the contract itself, if it had been performed; but not those which he would have realized from other contracts entered into for the purpose of fulfilling such special contract. BIGELOW, J., delivering the opinion of the court, says (p. 523): "If the plaintiffs had offered to prove, in addi-

tion to this, that in consequence of the breach of the contract by the defendants, they had lost other contracts by which they would have realized large profits, and which they had entered into for the purpose of fulfilling their contract with the defendants, the evidence would have been wholly inadmissible; because such collateral undertakings were not necessarily connected with the principal contract, and cannot be reasonably supposed to have been taken into consideration when it was entered into." The Masterton and Fox cases are cited and followed in Hoy v. Gronoble, 34 Pa. 9. The doctrine announced in Hadley v. Baxendale is recognized and declared well established by ENDICOTT, J., delivering the opinion in Harvey v. Connecticut and Passumpsic Rivers R. R. Co., 124 Mass. 421 (26 Am. Rep. 673).

From these and other adjudicated cases the doctrine may be regarded as settled that for the breach of a contract damages may be recovered for loss of profits, the direct and immediate fruits of the contract itself and ascertainable with reasonable certainty, when they are the natural result of such breach, or which, under the circumstances, the parties may have contemplated at the execution of the contract as the probable result of its breach; but damages for the loss of profits for the violation of a contract may not be recovered where they are uncertain, remote or speculative, or when they grow out of a subsequent collateral or subordinate undertaking which was entered into upon the faith of the principal contract.

The contract in the present case by which the defendant agreed to furnish cars to the plaintiff was made in January, 1903, and its breach occurred in the following May. The contract between the plaintiff and the Pittsburg Coal Company was made in April, 1903, more than two months after the execution of the agreement between the plaintiff and the defendant, but before the defendant company had refused to furnish more cars and had thereby committed a breach of its agreement. Damages arising from profits which the plaintiff might have made on its contract with the Pittsburg Coal Company were manifestly not in contemplation of the parties when the contract between the plaintiff and the defendant was made in

January, 1903. The coal company contract was not then in existence and, so far as the defendant company knew, it was not even contemplated. It was a collateral undertaking between the plaintiff and the coal company of which the defendant company had no knowledge at the time it executed the contract with the plaintiff, and therefore the defendant could not have anticipated damages resulting to the plaintiff company by reason of the loss of profits on the coal company contract.

It is not sufficient to impose liability on the defendant company, that it had knowledge of the contract between the plaintiff and the Pittsburg Coal Company prior to the breach of the contract between the plaintiff and the defendant. This is an action upon the original contract, and the defendant is liable for only such profits as would naturally result from a breach of that contract and were in contemplation of the parties at the time the contract was executed. The action is not brought upon the original contract as subsequently modified after the defendant had notice of the Pittsburg Coal Company contract. At the time the original contract was entered into, it does not appear that the defendant was notified that the plaintiff had any contract with any person or company to furnish coal, or that the contract was executed on the part of the plaintiff with the view of furnishing any certain or definite amount of coal to anyone or had any agreement to do so. The Pittsburg Coal Company contract and any other agreements of a similar kind which the plaintiff may have intended to make, if any, were wholly unknown to the defendant company at the time it entered into the contract with the plaintiff on which this action is brought. It is clear, therefore, we think, that conceding the plaintiff's ability to show definitely the profits which it would have made on the Pittsburg Coal Company contract, yet it is manifest that the parties did not contemplate their loss as a consequence of a breach of the contract, and under all the authorities they cannot be recovered in this action.

The controlling question in the present case did not arise in Wilson v. Wernwag, 217 Pa. 82. In that case the damages

arose out of the contract between the parties, and there was no claim for a loss of profits on a collateral or subordinate contract. The loss there was the direct loss caused by the breach of contract between the parties, and therefore the damages resulting from the breach were in contemplation of the parties at the time they made their agreement. Here, the loss of profits arises out of a collateral undertaking which the defendant company could not anticipate and of which it had no knowledge at the time it entered into the agreement with the plaintiff.

The assignments of error are overruled and the judgment is affirmed.