# Cornelius v. Lytle, Appellant.

*Contract—Breach of contract to lease farm—Damages—Profits.*

1. For the breach of a contract to work a farm on shares or to operate it under a lease on shares, damages may be recovered for the value of the bargain.

2. When a person enters into an agreement to furnish a prospective tenant, a farm on which to carry on his business, and the lessee on the strength of this promise prepares for the work by the outlay of ·money in the enlargement of his capacity for successfully prosecuting it, no convincing reason is presented why the party who fails to perform his part of the undertaking should not be liable for damages for the loss which the innocent party has sustained by reason of the failure of the other party, and which grew immediately and directly out of the broken contract.

3. Where an owner agrees to lease a farm of 267 acres to be worked on shares, but is prevented by an injunction obtained by a previous tenant from delivering possession of the farm, and the lessee purchases stock and equipment which he moves to a farm of fifty acres in the neighborhood of the larger farm, and works the smaller farm for a year, the lessee will be entitled to recover from his lessor the loss of profits on the larger farm, less the profits which he made during the year on the smaller farm.

*Evidence—Witness—Expert.*

4. A witness called to testify as to profits that might be made on a particular farm, is competent to testify, where it appears that he had lived on the farm for many years, and had observed the methods of cultivation practiced by the tenants who succeeded him, although he had not himself worked the farm for ten years prior to the trial.

Argued Oct. 29, 1912. Appeal, No. 18, Oct. T., 1912, by defendant, from judgment of C. P. Blair Co., Oct. T.,

1908, No. 181, on verdict for plaintiff in case of Harry. V. Cornelius v. Edward H. Lytle. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit for breach of a contract for the leasing of a farm. Before SCHULL, P. J., specially presiding.

At the trial it appeared that the defendant had agreed to lease to the plaintiff a farm containing 267 acres which the plaintiff agreed to work on shares. The defendant was unable to deliver possession because of an injunction placed upon him by a previous tenant. The plaintiff increased his stock and equipment, and being unable to secure the farm in question leased a farm of fifty acres in the neighborhood to which he moved his stock and equipment, and there worked for the current year.

Marshall Morgan was offered as a witness for plaintiff. "Q. You are a farmer, now residing near Edward H. Lytle? A. Yes, sir. Q. You are familiar with the farm in question in this suit? A. Yes, sir. Q. You lived on it at one time? A. Yes, sir. Q. For how many years did you reside on this farm and work it? A. It is ten years this spring since I left there; I lived there fourteen years."

Objected to as being too remote.

"Q. For how many years did you live on that farm? A. I lived there myself for fourteen years; my father and I together lived there for twenty-eight years. Q. Have you been acquainted with the farm since that time? A. No, sir. Q. Have you been on the farm since that time? A. I was on it about two years ago; one Sunday I was out there and we walked over there; not quite two years ago, we walked around the buildings and looked over it. Q. You walked around and looked over the farm and buildings? A. Yes, sir. Q. Will you please state to the court and jury what a farmer, an ordinarily good farmer, could have made in profits on that farm two years ago, when you were there, with all the help that he needed, with the privilege of keeping ten milch cows, using 1,000

bushels of fertilizer, or lime, with fences and other repairs kept well up, each year?"

Objected to by Mr. Dively, first, because it is speculative in its character; second, the witness has testified that he has not lived on that farm for ten years, and it is too remote, too long since.

The Court: "Q. Do you know whether the farm two years ago was about in the same condition as it was at the time you left it ten years ago? A. No, it was not."

Objection is overruled, evidence admitted, and bill sealed for the defendant. [7]

Mr. Dively: The defendant offers to prove by the plaintiff on the stand that the farm that he moved upon was fully as good, the land just as productive, and that the profits off of the farm would actually have been greater than the profits of the farm which he had leased from the defendant; this for the purpose of mitigating the damages.

Mr. Patterson: The offer is objected to, first, because it is not proper cross-examination; second, because it is irrelevant and immaterial, and is not evidence in mitigation of damages in this case.

The Court: The objection is sustained, the evidence rejected, and bill sealed for defendant. [14]

"Q. How much corn, wheat and oats and potatoes did you raise on the Mayne farm during that year; how many horses did you keep, and how many milch cows, and how many head of young cattle, and did you keep your sons at home to work that farm?"

Objected to by Mr. Patterson, for the reason that the court has already ruled on the same question this morning; and, second, it is irrelevant and immaterial.

The Court: The objection is sustained, the evidence rejected, and bill sealed for defendant. [15]

Mr. Dively: We desire to prove by this witness, Jerry Brumbaugh, that the Mayne farm, the one Mr. Cornelius lived upon for the year 1908 to 1909, although smaller, is in a better state of cultivation than the Adams farm; that he had a better market for his products, and was only

half a mile from the town of Martinsburg, and that he had a ready sale for everything he raised on the Mayne place, and this for the purpose of showing that Mr. Cornelius did not lose anything by being deprived of the Adams farm, and as entering into the question of mitigating the damages for the year beginning April, 1908, to April, 1909.

Objected to by Mr. Patterson as immaterial and inadmissible.

The Court: The objection is sustained, the evidence rejected and bill sealed for the defendant. [17]

The court charged in part as follows:

[The defendant being unable to carry out his portion of the contract we say as we understand the law that it was his duty to make some provision for this plaintiff; in other words, if the defendant at that time said to the plaintiff I cannot give you the Adams farm, but I will give you the Brown farm, or some other farm, and the Brown farm is just as good as the Adams farm, and if the plaintiff had then refused to go upon the Brown farm then he would not have been carrying out everything that he could have reasonably done to prevent damages, but the plaintiff says no other farm was offered to him, and that it was then incumbent to look out for himself and when he had looked out for himself that was a separate and distinct proposition, it was not that which was in contemplation of the parties at the time the contract was entered into, because he had to go to another and different property in order to find a place of shelter for his family and property, and for that reason we have declined to admit evidence in this case which would tend to show moneys or profits from another farm on which Mr. Cornelius entered; and you, therefore, will consider only the question as we submit it, to wit: that whatever profits the plaintiff could have made on the Adams farm which the defendant leased to him he would be entitled to recover in this action, at least the first year, and he is further entitled to recover

for any expense or loss that he had sustained by reason of the default of E. H. Lytle, the defendant.] [1]

[And a man is entitled to the profits of his bargain, the profits that he could have fairly and reasonably derived from it if the other party had fulfilled his part of the contract.] [2]

[Then we come to the second branch of this case, and that is for the year beginning April 6, 1908, and ending with the first of April, 1909. Now, what was his loss on profits during that year? He testifies that he could probably have raised 2,000 bushels of corn, 600 bushels of wheat and 500 bushels of oats. Under the terms of their agreement he would only have been entitled to one-half of this; that is, the tenant would only be entitled to 1,000 bushels of corn, 300 bushels of wheat and 250 bushels of oats. Then he must feed his stock yearly from this, because that would be incumbent upon him, the defendant was not required to feed the plaintiff's stock, so you deduct that. You deduct also the taxes, although there is no evidence to show what these taxes were, but whatever you would find under the evidence. And then you would also deduct from that one-half of the seed; you are farmers and will understand that part of the proposition; all this must come off, and then you would find out what would be the net profits.] [3]

Verdict and judgment for plaintiff for $932.50. Defendant appealed.

*Errors assigned* among others were (1–3) above instructions, quoting them; (7–14, 15–17) rulings on evidence, quoting the bill of exceptions.

*J. D. Hicks,* for appellant.—There was no sufficient or definite evidence on the trial of the cause as to the profits which Cornelius could have made on the farm if he had been in possession. The alleged profits were uncertain, remote or speculative: Clyde Coal Co. v. Pittsburg & Lake Erie Railroad Co., 226 Pa. 391; Walter v. Transue, 17 Pa.

Superior Ct. 94; Bitner v. Brough, 11 Pa. 127; Allegaert v. Smart, 10 W. N. C. 29.

Deduction should have been made from the profits earned on the smaller farm: Heyer v. Cunningham Piano Co., 6 Pa. Superior Ct. 506; Emery v. Steckel, 126 Pa. 171; Coates v. Allegheny Steel Co., 234 Pa. 199.

*Marion D. Patterson,* for appellee.—The rule allowing damages for loss of profits, the direct and immediate fruits of the contract itself, and ascertainable with reasonable certainty, when they are the natural result of such breach, or which under the circumstances, the parties may have contemplated at the execution of the contract as the probable result of its breach, is followed in the very recent cases of: Clyde Coal Co. v. Pittsburg & Lake Erie Railroad Co., 226 Pa. 391; Hillsdale Coal & Coke Co. v. Pennsylvania Railroad Co., 229 Pa. 61; Hendler v. Quigley, 38 Pa. Superior Ct. 39; Cope v. Bangor & Portland Traction Co., 39 Pa. Superior Ct. 134; Samuel v. Sota, 41 Pa. Superior Ct. 630; Press Publishing Co. v. Reading News Agency, 44 Pa. Superior Ct. 428.

OPINION BY HENDERSON, J., February 27, 1913:

This action arises out of the breach of a contract for the leasing of a farm containing 267 acres owned by the defendant which the plaintiff agreed to work on shares according to the terms set forth in the lease. Possession was to have been delivered to the plaintiff April 1, 1908, but the lessor was unable to give possession, he having been restrained by an injunction obtained by the tenant of the preceding year. The plaintiff lived about twenty-five miles away and in anticipation of carrying out his undertaking bought additional stock necessary for the profitable use of the farm and moved from the place he then occupied to the new location. Being denied possession he leased a farm of fifty acres a few miles from the larger place and worked that for the current year. Having no place nor use for so large an equipment he was com-

pelled to sell a considerable part of his stock at a sacrifice and his claim was for this loss and for the profits which he would have made on the place of which the defendant failed to deliver possession. The court admitted evidence of the value of the bargain to the plaintiff in the working of the farm for a year and rejected evidence offered by the defendant to show the profits from the fifty acre farm which the plaintiff worked. The material questions raised by the assignments of error relate to the measure of damages as established by the court. The appellant contends that inasmuch as the failure to give possession of his farm was not willful and the result of his own act the plaintiff is only entitled to compensation for the reasonable expenditures to which he was subjected because of the defendant's default, in accordance with the doctrine stated in M'Clowry v. Croghan, 31 Pa. 22; Bartram v. Hering, 18 Pa. Superior Ct. 395, and other cases along the same line of adjudication in which a contract to lease is likened to a contract for the sale of land with respect to the measure of damages for a breach arising from the refusal of the lessor or vendor to perform. Of these cases Dumars v. Miller, 34 Pa. 319; Hertzog v. Hertzog, 34 Pa. 418; Bowser v. Cessna, 62 Pa. 148; and Rineer v. Collins, 156 Pa. 342, arose out of parol contracts for the sale of land. M'Clowry v. Croghan, 31 Pa. 22; Walter v. Transue, 17 Pa. Superior Ct. 94, and Sausser v. Steinmetz, 88 Pa. 324, arose on parol agreements for leases for a term of five years. None of them involves a contract like that on which the plaintiff's action is founded. His agreement was not only for the occupancy of the farm for the term but included the prosecution of a business in the result of which the defendant was equally interested. The enterprise necessarily involved the use of machinery, horses, cattle and generally speaking the outfit employed in the cultivation of a large farm. It is a business the outcome of which can be calculated with reasonable certainty based on the experience of men engaged in the same pur-

suit. When, therefore, a person enters into an agreement to furnish a prospective tenant a farm on which to carry on his business and the lessee on the strength of this promise prepares for the work by the outlay of money in the enlargement of his capacity for successfully prosecuting it, no convincing reason is presented why the party who fails to perform his part of the undertaking should not be liable for damages for the loss which the innocent party has sustained by reason of the failure of the other party and which grow immediately and directly out of the broken contract. This was the principle applied in Hoy v. Gronoble, 34 Pa. 9, which was an action for the breach of a contract with the plaintiff to work the defendant's farm on shares. The plaintiff was permitted at the trial in the court below to prove what he could have made on the farm if he had been allowed to proceed under the agreement and this instruction was affirmed on appeal the court holding that the plaintiff was entitled to what he would have made immediately out of the contract. Damages of this character are considered to be in the immediate contemplation of the parties when the contract is made. The profits are part of the bargain itself—they are the thing provided for by the terms of the contract. Steel v. Frick, 56 Pa. 172, was an action for damages on a lease where the lessor failed to give possession. The court below instructed the jury that if the lessee was prevented from enjoying the premises either by the act of the lessor or his want of right or power to give possession then the tenant would be entitled to recover whatever damages he sustained, and if the jury believed that he was deprived of possession by the want of power in the landlord to give possession he was entitled to recover and this instruction was sustained. The case of Wolf v. Studebaker, 65 Pa. 459, is another case for damages occasioned by the failure of the landlord to give possession on a contract by which the defendant leased her farm to the plaintiff to be worked on shares. The plaintiff offered evidence to show the damage sustained

VOL. LII—26

by him in consequence of the breach of contract. The principal question in the case was whether the defendant could show what the plaintiff had earned in other kinds of work with his team during the year in mitigation of damages. It was held that this was not competent, but the right of the plaintiff to recover for the breach was not controverted. The rule of damages for a breach of contract declared in Hadley v. Baxendale, 26 Eng. L. & Eq. 398, that where two parties have made a contract which one of them has broken the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, according to the usual course of things, from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it, was held in Fleming v. Beck, 48 Pa. 309, to be entirely sound and this was the rule applied in Wolf v. Studebaker, 65 Pa. 459. The case of Hoy v. Gronoble, 34 Pa. 9, was cited in Pennypacker v. Jones, 106 Pa. 237, as holding that profits may be recovered where they are part and parcel of the contract itself entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the enjoyment of any other stipulation; and both Hoy v. Gronoble and Wolf v. Studebaker were cited with approval in Wilson v. Wernwag, 217 Pa. 82, in support of the conclusion there reached that profits may be recovered for the breach of a contract whenever they are susceptible of proof and that the injured party has the right to demand and receive from the defaulting party full compensation for the loss he has sustained by the breach of the contract. It was there laid down that when the evidence shows with a reasonable certainty the profits which have been lost by the breach of contract they should be considered damages recoverable by the injured party from the one in default. The same doctrine

was restated in Clyde Coal Co. v. P. & L. E. R. R. Co., 226 Pa. 391, and both Hoy v. Gronoble, and Wolf v. Studebaker, are there cited with other cases in support of the principle: "From these and other adjudicated cases the doctrine may be regarded as settled that for the breach of a contract damages may be recovered for loss of profits, the direct and immediate fruits of the contract itself and ascertainable with reasonable certainty, when they are the natural result of such breach, or which, under the circumstances, the parties may have contemplated at the execution of the contract as the probable result of its breach; but damages for the loss of profits for the violation of a contract may not be recovered where they are uncertain, remote or speculative, or when they grow out of a subsequent collateral or subordinate undertaking which was entered into upon the faith of the principal contract." We have then in a very recent case not only the statement of the general principle but the indorsement of the doctrine of the cases heretofore cited which hold that for the breach of a contract to work a farm on shares or to operate it under a lease on shares damages may be recovered for the value of the bargain. The reasonableness of such a rule is illustrated by the facts of the case before us. The plaintiff was induced to quit the farm on which he was living and move a long distance to the defendant's property; to properly qualify himself to carry out the terms of the lease he bought additional farm implements and stock; the members of his own family provided sufficient help in addition to his own to operate a farm of the size of that leased; when he came to take possession of the premises the defendant could not remove the prior lessee and the plaintiff was without a place to use his team and stock or to furnish employment for himself and his sons, and his opportunity for profitable occupation of the same kind for that season was lost in part because the defendant did not comply with his agreement. It would be a hard rule which would turn a plaintiff onto the street under such circumstances

and deny him any recompense except the expense incident to his moving.

On the second proposition we are unable to agree with the learned trial judge that it was not competent to prove the profit derived by the plaintiff from the use of the farm which he did get. Evidence would not be admissible to prove what he made in odd jobs not connected with his regular business, but the extent to which he prosecuted a like business in the same neighborhood for the same term might be shown in mitigation of damages. It appears from the plaintiff's own evidence that the profits which he expected to make on the defendant's farm were to be derived not only from his management of the business but also from the use of the teams and cows and farm machinery which he owned and from the labor of his children. If this supervision and labor and these teams and cows and the farm machinery were profitably used on another place it could not be logically contended that the defendant's failure to give possession of the farm produced damage equal to all that the plaintiff might have made on that place. He could not use his labor and teams and stock on two farms at the same time, and it would be manifestly unjust to permit him to use all these agencies on one place and recover the profits of their use for the same period on another place. If the next day after the plaintiff learned that he could not get possession of the farm he intended to occupy he had secured another as large and as good in the immediate vicinity and had carried on the business on as advantageous terms, it could not be said that the loss resulting to him from the defendant's failure to give possession was the profit which he might have made out of that farm and this for the obvious reason that he was not equipped to carry on two farms and does not pretend to have been able so to do. He could manage one farm of the size of that of the defendant but not two from anything that appears in the case. If, then, he devoted his energy, the labor of his sons and the work of his teams to the cultivation of another

farm and if this resulted profitably to him to the extent to which it was profitable he lost nothing by his failure to cultivate the defendant's land.   True it is that the farm which he got was less than one-fifth the size of that which he contracted to get and it consequently furnished a much more limited field for the exercise of his ability as a manager and for the labor of his hands and his horses; nor could he keep as many cattle there as he would have done on the larger place, but this is a matter of degree and not of quality.   If he obtained employment of the same kind in the same neighborhood we think the defendant might show the extent to which such occupation was profitable in comparison with that which he would have engaged in if the defendant had carried out his promise.

The testimony of Marshall Morgan was properly admitted.   He had lived on the farm for many years and observed the methods of cultivation practiced by the tenants who succeeded him.   Ten years had elapsed since he worked the place, and his testimony would have less weight than if he had remained there until a recent date, but his testimony discloses a sufficient familiarity with the character of the farm and the crops which it produced to make him a competent witness.   The appellant's objections go rather to the weight of his evidence than to its admissibility.   We sustain the fourteenth, fifteenth and seventeenth assignments so far as the action of the court there excepted to denies to the defendant the right to show any profits which the plaintiff derived from the Mayne farm in mitigation of damages.

The judgment is reversed with a venire facias de novo.

RICE, P. J., dissenting:

When one who has executed a valid lease is, through no fault of his own, unable to carry out his contract, the lessee cannot recover the value of his bargain, and the measure of damages is limited to the consideration paid and the expenses incurred, unless there has been bad faith.   In

such cases the measure of damages is dependent upon whether the lessor acts with good or bad faith: Bartram v. Hering, 18 Pa. Superior Ct. 395. I am not convinced, although I am much impressed by the reasoning of Judge HENDERSON's opinion, that this rule was not applicable here. Therefore, it seems to me there was error in the court's instruction that the plaintiff was entitled to recover the value of his bargain without regard to the question of the lessor's good or bad faith.

Nor am I convinced that it was competent, in the present case, to introduce, by way of mitigation of damages, evidence of the profits that the plaintiff made on the farm that he got. It seems to me that the damages he was entitled to recover for the breach of the contract were not at all dependent upon the determination of how much he made during the year on another farm, in the absence of proof that he could not have managed both farms properly. Therefore I would overrule the fourteenth, fifteenth and seventeenth assignments.

Another point upon which I cannot agree with the majority is as to the admissibility of the testimony of Marshall Morgan. It is true, he had resided on the farm, but he admitted that it was ten years before and that he had not been acquainted with the farm since that time. He said he had visited the farm about two years before, but was unable to say whether the farm was then in the same condition as it was at the time he left it. Under these circumstances, it seems to me that he was not qualified to testify as to the profits that a good farmer could have made on the farm. For the foregoing reasons I concur with the conclusion of the majority that there should be a retrial of the case, but I cannot concur with them in all of the grounds set forth in the opinion.

Judge PORTER concurs in foregoing.